**IN THE UNITED STATES DISTRICT COURT**
**FOUR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DISABILITY RIGHTS MISSISSIPPI** **PLAINTIFF**

**V.** **CAUSE NO.** 3:21-cv-726-CWR-FKB

**MISSISSIPPI DEPARTMENT OF MENTAL HEALTH** **DEFENDANT**

---

**COMPLAINT**
***For Declaratory and Injunctive Relief***

---

Plaintiff, DISABILITY RIGHTS MISSISSIPPI ("DRMS"), is the Protection and Advocacy System ("P&A") for individuals with disabilities in Mississippi. DRMS advocates for and protects the civil rights of individuals with disabilities in this State through, among other means, investigating allegations of abuse or neglect. In the course of such investigations, DRMS is authorized to access records of individuals with disabilities[1]. Defendant, Mississippi Department of Mental Health ("DMH") has denied DRMS access to records to which it is legally entitled. By this action, DRMS seeks an order from this Court requiring Defendant to provide the requested information so that DRMS may discharge its statutory duties and investigate the alleged neglect of an individuals with a developmental disability and/or a mental illness. In support of the same, DRMS provides as follows:

[1] This authority was first codified through the passage of the Protection & Advocacy for People with Developmental Disabilities (PADD) Act. 42 U.S.C. § 15043(a)(2)(B). Over time, Congress extended the protections of the PADD Act, incorporating them by reference into legislation protecting persons with other forms of disabilities.
This includes both the Protection & Advocacy for Individual Rights (PAIR) Act, 29 U.S.C. §794e(f)(1), and the Protection & Advocacy for Individuals with Traumatic Brain Injury (PATBI) Act. 42 U.S.C. § 300d-53 (eff. April 28, 2008). Similarly, Congress expanded the P & A system through passage of the Protection & Advocacy for Individuals with Mental Illness (PAIMI) Act 42 C.F.R. § 51.42(c)(2) and the Protection & Advocacy for Beneficiaries of Social Security (PABSS). The Ticket to Work and Work Incentives Improvement Act of 1999, as amended, 42 U.S.C. § 1320b-21 governs funding of P&A systems.

## I. INTRODUCTION

1. This action seeks to enjoin DMH from continuing to violate federal and state laws that grant DRMS reasonable access its records for the purpose of fulfilling its mandate as the protection and advocacy agency for people with disabilities in Mississippi.

2. Due to Defendant's continuing violation of federal and state law, DRMS seeks declaratory, preliminary, and permanent injunctive relief to enjoin Defendants from denying reasonable access to certain records following DRMS' determination of probable cause to investigate facilities operated by DMH.

3. DRMS files this suit and seeks relief as described after making repeated efforts to resolve this matter with DMH, including multiple correspondence and meetings with DMH's counsel through the Mississippi Attorney General's Office ("AGO"). DRMS also seeks costs and any other available relief.

4. Each paragraph of this Complaint incorporates all other without specific restatement.

## II. JURISDICTION AND VENUE

5. Jurisdiction is vested in this Court as this case raises a question of general federal law, 28 U.S.C. §1331, and under this Court's supplemental jurisdiction as to Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Plaintiff's cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §10801 *et seq*.; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §15041 *et seq*.; the Protection and Advocacy for Individual Rights Act ("PAIR Act"), 29 U.S.C. §794(e). Costs may be awarded pursuant to Fed. R. Civ. P. 54.

7. Venue is proper in this Court under 28 U.S.C. §1391(b). Defendant's main office of operations is located in this district.

## III. PARTIES

8. Plaintiff, DISABILITY RIGHTS OF MISSISSIPPI, is a non-profit corporation duly incorporated in the state of Mississippi. DRMS is designated by the Governor of the State of Mississippi as the protection and advocacy system for people with disabilities in Mississippi. DRMS files this complaint in its own name to redress injuries to itself in fulfilling its mandate to protect and advocate for the rights of people with disabilities.

9. DRMS is located at 5 Old River Place, Suite 101, Jackson, Mississippi 39202.

10. Congress established the protection and advocacy ("P&A") system in 1975 to protect and advocate for the rights of persons with developmental disabilities, and reauthorized the system in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"). 42 U.S.C. § 15041 *et seq*. Congress provided P&A systems with the authority to investigate incidents of abuse and neglect against individuals with developmental disabilities and pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a). Congress thereafter expanded the scope of the P&A system to provide protection and advocacy services to all persons with disabilities. The Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act") provides for the protection of rights of individuals with mental illness, 42 U.S.C. § 10801 *et seq*.; and the Protection and Advocacy of Individual Rights Program (the "PAIR Act") was created to protect the rights of all other individuals with disabilities who are not covered under the PADD and PAIMI Acts. 29 U.S.C. § 794e *et seq*.

11. Pursuant to these laws, DRMS has a federal mandate to protect and advocate for the rights of persons with disabilities in Mississippi, including those that are under the care of DMH in its facilities. Among other activities, DRMS travels across the state of Mississippi, regulating monitoring facilities and investigating allegations of abuse and neglect.

12. Defendant, MISSISSIPPI DEPARTMENT OF MENTAL HEALTH, is a state agency that provides mental health care to Mississippians who have developmental/intellectual disabilities, mental health illness, and other disabilities.

13. Mississippi's mental health service delivery system is comprised of three major components: 1) state-operated programs and community service programs, 2) regional community mental health centers, 3) and other nonprofit/profit service agencies/organizations.

14. Those facilities include, but are not limited to, the following: Boswell Regional Center, North Mississippi Regional Center, South Mississippi Regional Center, North Mississippi State Hospital, Ellisville State School, South Mississippi State Hospital, Central Mississippi Residential Center, Mississippi State Hospital, Hudspeth Regional Center, and East Mississippi State Hospital. DRMS conducts regular monitoring, rights training, and, when necessary, investigations at all of these facilities and has done so for many years.

15. DMH's main office overseeing operations of its facilities is located at 1101 Robert E. Lee Building, 239 N. Lamar Street, Jackson, Mississippi 39201.

16. Individuals with mental illness, developmental disabilities, and/or other physical or mental impairments that substantially limit one or more major life activities of such individuals are institutionalized at DMH facilities across the state.

17. Individuals who are institutionalized at DMH facilities receive care, treatment, services, supports, and habilitation, including, but not limited to: screening, evaluation, counseling, behavioral therapies, medication treatment and supervision, assistive devices, and special education services.

18. Facilities operated by DMH are a facilities as defined in 42 U.S.C. §10802(3) and 42 C.F.R. §51.2.

19. DMH facilities are service providers, as provided in 42 C.F.R. §1326.27(c), because services, supports, and other assistance are provided there to individuals with disabilities.

## IV. FACTUAL HISTORY

20. DRMS, as the designated P&A for the State of Mississippi, regularly and routinely monitors all facilities under the oversight of DMH. Due to mounting concerns following DMH's ongoing failures as outlined by the United States Department of Justice in its litigation and subsequent rulings as well as growing complaints when interviewing residents at these facilities, DRMS determined that it would begin to review incident reports at each facility.

21. Given its proximity to DRMS offices, DRMS made its initial request for these documents at Mississippi State Hospital ("MSH") and submitted a general request for incident reports within the last thirty (30) days on August 17, 2021. This letter is attached hereto as **Exhibit A**.

22. On August 27, 2021, MSH responded to this request, by and through counsel at the Mississippi Attorney General's Office ("AGO"), and refused to comply with DRMS' request. This response is attached hereto as **Exhibit B**.

23. Following this failure to comply, DRMS was contacted by the AGO and, subsequently, a conference was conducted to discuss this denial. Following this meeting, DRMS supplied relevant authority to the AGO to support its request.

24. On October 18, 2021, DRMS received correspondence from the AGO which provided a misinterpretation of DRMS' access authority and further denied DRMS' request. However, it was recognized in this correspondence that DRMS does have authority to access incident reports. This letter is attached as **Exhibit C** with emphasis added.

25. At this point, DRMS made the determination that, given the information obtained during the course of its routine and regular monitoring, complaints from DRMS clients across

DMH facilities, and anonymous information provided by staff at various facilities compounded with the concerns/observations that COVID protocol and precautions had not been followed, there was sufficient probable cause to open a systemic investigation of DMH facilities.

26. On October 15, 2021, DRMS issued its standard probable cause/investigative notice letters to the following DMH facilities to initiate investigations at each: Boswell Regional Center, North Mississippi Regional Center, South Mississippi Regional Center, North Mississippi State Hospital[2], Ellisville State School, South Mississippi State Hospital, Central Mississippi Residential Center, Mississippi State Hospital, Hudspeth Regional Center, and East Mississippi State Hospital. These letters are attached hereto as **Exhibit D**.

27. On October 28, 2021, DMH, through their counsel, transmitted a letter, refusing to comply with DRMS' investigative request. This letter is attached hereto as **Exhibit E**.

28. In their most recent letter, the AGO states that DRMS failed to provide "sufficient probable cause" or "present a complaint to MSH". DRMS is not required to do either of these things.

29. As the P&A, DRMS may initiate investigations of facilities if there is probable cause to believe that there is potential abuse and neglect as DMH solely houses individuals that DRMS is mandated to protect. If DMH held a population of residents of which only a portion fell under DRMS' mandate, their position *might* be supported. However, every single one of the people currently under the care of the DMH are individuals with disabilities. Therefore, DRMS is mandated to protect each and every person in these facilities.

---

[2] It should be noted that DRMS already had an ongoing investigation at North Mississippi Regional Center which has been ongoing since April 2021.

## V. CLAIMS

### First Claim For Relief: Violations of the PAIMI Act & Implementing Regulations

30. As the designated protection and advocacy system for individuals with disabilities in Mississippi, DRMS has access to facilities in Mississippi providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3).

31. DRMS is charged to investigate instances of abuse and neglect of individuals with mental illness. 42 C.F.R. § 51.42(b).

32. DRMS is authorized to have reasonable unaccompanied access to public and private facilities and programs in the State, which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. 42 C.F.R. § 51.42(b)

33. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. Residents include adults or minors who have legal guardians or conservators. 42 C.F.R. § 51.42(b) and (d).

34. In accordance with this mandate, the P&A system has: access to the records of any of the following individuals with mental illness:

   a. An individual who is a client of the P&A system if authorized by that individual or the legal guardian, conservator or other legal representative.
   b. An individual, including an individual who has died or whose whereabouts is unknown to whom all of the following conditions apply:
      i. The individual, due to his or her mental or physical condition, is unable to authorize the P&A system to have access.
      ii. The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State or one of its political subdivisions; and
      iii. A complaint or report has been received and the P&A system has determined that there is probable cause to believe that the individual has been or may be subject to abuse or neglect.
   c. An individual who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint or report has been received by the P&A system

and with respect to whom the P&A system has determined that there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, whenever all of the following conditions exists:

i. The P&A system has made a good faith effort to contact the representative upon prompt receipt of the representative's name and address;
ii. The P&A system has made a good faith effort to offer assistance to the representative to resolve the situation; and
iii. The representative has failed or refused to act on behalf of the individual. 42 C.F.R. § 51.41(b)

35. In its routine monitoring of DMH facilities, DRMS received information and complaints from DMH patients, their families, and from DRMS' own observations of troubling issues at DMH facilities, including but not limited to, understaffing, unreported incidents, patient neglect, and non-use of COVID protocol/precautions by on-site staff.

36. In an effort to commence a deeper look into these concerns, DRMS initially started an investigation at North Mississippi Regional Center which is currently still ongoing. Incident reports were requested in connection with this investigation which were never provided.

37. In an attempt to follow up on these issues facility-by-facility, DRMS then attempted to review incident reports at MSH. This request was immediately refused.

38. In light of the increasing refusal to comply, DRMS sent its template investigatory/probable cause letter to all facilities which DRMS intended to investigate.

39. As noted in communications with DMH, these incident reports will give DRMS a starting point regarding understaffing, potential neglect, and staff-on-resident injury/incident.

40. Defendant's refusal to provide DRMS with reasonable access to records, specifically the incident reports, violates the PAIMI Act and its implementing regulations.

41. Defendant's violation of the PAIMI Act and its implementing regulations frustrates and interferes with DRMS' federal mandate to protect people with disabilities in Mississippi; provide legal advocacy for people with disabilities; to conduct a reasonable and effective an investigation into these facilities; and determine whether corrective action should be taken.

42. Defendant's violation of the PAIMI Act and its implementing regulations frustrates the rights of DMH patients and residents to have access to a meaningful and effective protection and advocacy system.

43. Pursuant to 42 U.S.C. § 10805(a)(1)(B), DRMS is authorized to pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in Mississippi.

44. DRMS is entitled to relief under 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.41(c).

**Second Claim for Relief: Violations of the PADD Act, Implementing Regulations, and 42 U.S.C. §1983**

45. DRMS is authorized to have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual. 42 U.S.C. § 15043(a)(2)(H).

46. DRMS is authorized to have unaccompanied access to individuals with developmental disabilities at all times necessary to conduct a full investigation of an incident of abuse and neglect. 45 C.F.R. § 1326.27(b).

47. A P&A system shall have reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them. Such access shall be provided without advance notice and made available immediately upon request. This authority shall include the opportunity to interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. . 45 C.F.R. § 1326.27(b).

48. The P&A system has access to the records of individuals with developmental disabilities under the following circumstances:

a. If authorized by an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative.
b. In the case of an individual to whom all of the following conditions apply:
   i. The individual, due to his or her mental or physical condition, is unable to authorize the system to have access;
   ii. The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and
   iii. The individual has been the subject of a complaint to the P&A system, or the P&A system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse and neglect.
c. In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom a complaint has been received by the system or, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:
   i. The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;
   ii. The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and
   iii. The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.
d. If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed. 45 C.F.R. §1326.25.

49. In connection with its determination of probable cause, certain documents have been requested from multiple DMH facilities where DRMS monitors and represents clients.

50. Despite every effort to clarify DRMS' access authority and obtain the documents, DMH has consistently refusing to comply with this request.

51. Defendant's refusal to allow DRMS reasonable access to records at DMH facilities violates the PADD Act and its implementing regulations.

52. Defendant's violation of the PADD Act and its implementing regulations frustrates and interferes with DRMS' federal mandate to protect people with disabilities in Mississippi; provide legal advocacy for people with disabilities; conduct a reasonable and effective investigation; and determine whether corrective action should be taken.

53. Defendant's violation of the PADD Act and its implementing regulations frustrates the rights of DMH patients and residents to have access to a meaningful and effective protection and advocacy system.

54. Pursuant to 42 U.S.C. §15043(a)(2)(A)(i), DRMS is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within Missssissippi who are or who may be eligible for treatment, services, or habilitation.

55. DRMS is entitled to relief under 42 U.S.C. §15043(a)(2)(H), and 45 C.F.R. §1326.27(d).

**<u>Third Claim for Relief: Violations of the PAIR Act, Implementing Regulations, and 42 U.S.C. §1983</u>**

56. The PAIR Act provides DRMS with the authority to serve individuals with disabilities who are not otherwise eligible for protection and advocacy services under either the PADD Act or PAIMI Act. 29 U.S.C. §794e(a)(1).

57. The PAIR Act incorporates the same general authorities of access as are found in the PADD Act. 29 U.S.C. § 794e(f)(2).

58. DRMS is authorized to have access at reasonable times to any individual with a disability in a location in which services, supports, and other assistance are provided to such an individual. 42 U.S.C. § 15043(a)(2)(H).

59. A P&A system shall have reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them. Such access

shall be provided without advance notice and made available immediately upon request. This authority shall include the opportunity to interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. . 45 C.F.R. § 1326.27(b).

60. The P&A system also has access to the records of individuals with disabilities under the following circumstances:

a. If authorized by an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative.

b. In the case of an individual to whom all of the following conditions apply:
    i. The individual, due to his or her mental or physical condition, is unable to authorize the system to have access;
    ii. The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and
    iii. The individual has been the subject of a complaint to the P&A system, or the P&A system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse and neglect.

c. In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom a complaint has been received by the system or, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:
    i. The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;
    ii. The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and
    iii. The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.

d. If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed. 45 C.F.R. § 1326.25

61. In connection with its determination of probable cause, certain documents have been requested from multiple DMH facilities where DRMS monitors and represents clients.

62. Despite every effort to clarify DRMS' access authority and obtain the documents, DMH has consistently refusing to comply with this request.

63. Defendant's refusal to allow DRMS' reasonable access to records violates the PAIR Act and its implementing regulations.

64. Defendant's violation of the PAIR Act and its implementing regulations frustrates and interferes with DRMS' federal mandate to protect people with disabilities in Mississippi; provide legal advocacy for people with disabilities; conduct a reasonable and effective investigation; and determine whether corrective action should be taken.

65. Defendants' violation of the PAIR Act and its implementing regulations frustrates the rights of DMH patients and residents to have access to a meaningful and effective protection and advocacy system.

66. Pursuant to 29 U.S.C. § 794e(f)(3), DRMS is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within Mississippi who are or who may be eligible for treatment, services, or habilitation.

67. DRMS is entitled to relief under 29 U.S.C. § 794e(f)(2).

## VI. NECESSITY FOR INJUNCTIVE RELIEF

68. The Defendant has acted and continues to act in violation of the law as explained above.

69. DRMS and the individuals it is mandated to serve do not have an adequate remedy at law and will be irreparably harmed if Defendant is permitted to continue blocking DRMS' access to investigate incidents of abuse and neglect at it facilities.

70. Further, DRMS' probable cause notice expressly communicated that DRMS intends to initiate investigations into each of these facilities in light of the information and concerns which have been provided to the P&A.

## VII. REQUESTED RELIEF

WHEREFORE, DRMS respectfully requests the following relief:

A. a declaratory judgment that Defendant has violated DRMS' rights under the PAIMI Act, PADD Act, and PAIR Act;

B. a preliminary and thereafter permanent injunction requiring the Defendants to promptly provide DRMS with access to the requested records pursuant to its federally mandated P&A authority;

C. a preliminary and thereafter permanent injunction ordering Defendants to provide timely and complete responses to all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

D. retention of jurisdiction over this action to ensure Defendants' compliance with the mandates of the PAIMI and PADD Acts;

E. an award of costs pursuant to Fed. R. Civ. Proc. 54 and attorney's fees; and

F. any such other relief as the Court deems just, equitable and appropriate.

**RESPECTFULLY SUBMITTED**, this the 9th day of November, 2021.

**DISABILITY RIGHTS MISSISSIPPI**
*/s Greta Kemp Martin*
GRETA KEMP MARTIN, MSB 103672

**Attorneys for Plaintiff:**
GRETA K. MARTIN, MSB #103672
KATHERINE HENDERSON, MSB #104522
DISABILITY RIGHTS MISSISSIPPI
5 OLD RIVER PLACE, SUITE 101
JACKSON, MISSISSIPPI 39202
Office: (601)968-0600
Facsimile: (601)968-0665