

**ATTORNEY GENERAL**
STATE AGENCIES

August 27, 2021

*SENT VIA HAND DELIVERY AND U.S. MAIL*
Greta Kemp Martin, Litigation Director
**Disability Rights Mississippi**
5 Old River Place, Suite 101
Jackson, Mississippi 39202

    Re:    Disability Rights Mississippi's Records Request pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act")

Dear Greta:

    I write on behalf of Mississippi State Hospital ("MSH") in response to your August 17, 2021 correspondence. Please be advised that MSH respectfully denies Disability Rights Mississippi's ("DRMS") request, pursuant to 42 U.S.C. § 10801(b)(2)(B), for incident reports from MSH for the last thirty (30) days and on a regular, scheduled basis thereafter for the below reasons.

    Initially, we note the requestor is a representative of DRMS which has been designated as the state's protection and advocacy system ("P&A system") for purposes of the federal PAIMI Act, 42 U.S.C. § 10801-10851.

    The PAIMI Act provides, in relevant part, that DRMS, as the state's P&A system, shall

        (1)    have the authority to-

            (A)    investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[.]

42 U.S.C. § 10805(a)(1)(A). Further, the PAIMI Act provides DRMS shall

        (4) ... have access to all records of-

            (B)    any individual (including an individual who has died or whose whereabouts are unknown)-

Exhibit B

> (i) who by reason of the mental or physical condition of such individual is unable to authorize the [P&A system] to have such access;
>
> (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (iii) with respect to whom a *complaint has been received by the [P&A system]* or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) *there is probable cause to believe that such individual has been subject to abuse or neglect*[.]

*Id.* § 10805(a)(4)(B)(i)-(iii) (emphasis added). The term "records" as used in the above-quoted provision includes reports prepared by any staff of a facility rendering care and treatment [to the individual] or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records. *Id.* at § 10806(b)(3)(A); *see also* 42 C.F.R. § 51.41(c) (addressing P&A system's access to records under PAIMI). Further, the PAIMI Act defines the term "facilities" and states the term "may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3).

Although the definition of "records" is not limited to the information specifically described in sections 10806(b)(3)(A) and 15043(c) of Title 42 of the United States Code, we do not believe Congress intended for the definitions to be so expansive as to grant a P&A system access to *any* information it deems necessary.[1] Such a reading of the statute would render Sections 10806(b)(3)(A) and 15043(c) insignificant. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (statute should be construed in a way that no clause, sentence, or word shall be superfluous, void, or insignificant). Furthermore, considering Congress's evident preference for limiting the scope of access, we are unwilling to assume that Congress meant more than it said in enacting the PAIMI. *See Kofa v. INS*, 60 F.3d 1084 (4th Cir. 1995) (stating that statutory construction must begin with language of statute; to do otherwise would assume that Congress does not express its intent in words of statutes, but only by way of legislative history); *see generally Coast Alliance v. Babbitt*, 6 F. Supp. 2d 29 (D.D.C. 1998) (stating that if, in following Congress's plain language in statute, agency cannot carry out Congress's intent, remedy is not to distort or ignore Congress's words, but rather to ask Congress to address problem).

---

[1] Use of the term "includes" in Section 10806(b)(3)(A) of Title 42 of the United States Code indicates the definition of "records" is not limited to the information specifically listed in that section. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202 (5th Cir. 1996); *see also*, 42 C.F.R. § 51.41.

Greta Kemp Martin
August 27, 2021
Page 3

First, we believe that DRMS' interpretation of 42 U.S.C. § 10801(b)(2)(B) is overly broad and misconstrues the authority given to it by Congress. While DRMS does have authority to access records and/or incident reports, that authority arises in only two instances: "[1] if the incidents are reported to the system or [2] if there is probable cause to believe that the incidents occurred." See 42 U.S.C. § 10801(b)(2)(B). This is a clear federal legislative mandate for P&A Systems to investigate potential instances of abuse or neglect of individuals with mental illness. As neither situation is applicable to the DRMS request (and notably, DRMS does not rely on either a complaint or probable cause in its request), such request is outside of DRMS' scope of authority. See 42 U.S.C. § 15043(a)(2)(I)(ii)(III); 42 U.S.C. § 10805(a)(4)(B)(iii); 42 C.F.R. § 51.42(b)(1)-(3); 45 C.F.R. § 1326.25(a)(2)(iii); see also *Disability Law Center, Inc. v. Riel*, 150 F. Supp. 2d 294, 299 (D. Mass. 2001) (where there is a complaint or probable cause, P&As have the authority to access records needed to pursue legal, administrative, or other remedies for individuals with disability and to investigate incidents of abuse and neglect).

In the spirit of cooperation, should sufficient probable cause exist or if DRMS has received a complaint, kindly advise of such so that we may reevaluate your request.

Second, a blanket request for every incident report on a regularly scheduled basis is unduly burdensome and outside the scope of DRMS' access to records and reports. We can find no authority, and DRMS has cited to none, that would require MSH to routinely produce incident reports to DRMS. As you know, MSH regularly reports incidents to the Attorney General's Office and the Mississippi State Department of Health and is therefore in compliance with all applicable statutes and regulations. Requiring MSH to report to DRMS in addition to what is already required by law is simply unreasonable.

For the foregoing reasons, MSH denies your request. Should you have any questions or would like to discuss further, please do not hesitate to contact me.

With best regards, I am,

Sincerely,

MaCall M. Chastain, Esq.
Special Assistant Attorney General

550 HIGH STREET · SUITE 1200 · JACKSON, MISSISSIPPI 39201
POST OFFICE BOX 220 · JACKSON, MISSISSIPPI 39205
TELEPHONE (601) 359-3680