IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DISABILITY RIGHTS MISSISSIPPI**                                **PLAINTIFF**

**V.**                                 **CAUSE NO. 3:21-cv-726-CWR-FKB**

**MISSISSIPPI DEPARTMENT OF MENTAL**                    **DEFENDANT**
**HEALTH**

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, DISABILITY RIGHTS MISSISSIPPI ("DRMS"), seeks a preliminary injunction to prohibit Defendant, MISSISSIPPI DEPARTMENT OF MENTAL HEALTH ("DMH") from continued violation of federal and state laws stemming from their refusal to recognize and cooperate with the investigatory access authority of DRMS, the protection and advocacy agency ("P&A") for the state of Mississippi. DRMS requests that this Court enter a preliminary injunction to allow it to fulfill its mandate as the P&A for people with disabilities in Mississippi.

### I.     BACKGROUND & FACTS

**Defendant Has Denied DRMS Investigatory Access & Violated Federal Law**

DRMS, as the designated P&A for the State of Mississippi, regularly and routinely monitors all facilities under the oversight of DMH. Due to mounting concerns following DMH's ongoing failures as outlined by the United States Department of Justice in its litigation and subsequent rulings as well as growing complaints when interviewing residents at these facilities, DRMS determined that it would begin to review incident reports at each facility.

Given its proximity to DRMS offices, DRMS made its initial request for these documents at Mississippi State Hospital ("MSH") and submitted a general request for incident reports within the last thirty (30) days on August 17, 2021. (*See Compl. Ex. A*) On August 27, 2021, MSH responded to

1

this request, by and through counsel at the Mississippi Attorney General's Office ("AGO"), and refused to comply with DRMS' request. (*See Compl. Ex. B*)

Following this failure to comply, DRMS was contacted by the AGO and, subsequently, a conference was conducted to discuss this denial. Following this meeting, DRMS supplied relevant authority to the AGO to support its request. On October 18, 2021, DRMS received correspondence from the AGO which provided a misinterpretation of DRMS' access authority and further denied DRMS' request. However, it was recognized in this correspondence that DRMS does have authority to access incident reports. (*See Compl. Ex. C*)

At this point, DRMS made the determination that, given the information obtained during the course of its routine and regular monitoring, complaints from DRMS clients across DMH facilities, and anonymous information provided by staff at various facilities compounded with the concerns/observations that COVID protocol and precautions had not been followed, there was sufficient probable cause to open a systemic investigation of DMH facilities. On October 15, 2021, DRMS issued its standard probable cause/investigative notice letters to the following DMH facilities to initiate investigations at each: Boswell Regional Center, North Mississippi Regional Center, South Mississippi Regional Center, North Mississippi State Hospital[1], Ellisville State School, South Mississippi State Hospital, Central Mississippi Residential Center, Mississippi State Hospital, Hudspeth Regional Center, and East Mississippi State Hospital. (*See Compl. Ex. D*)

On October 28, 2021, DMH, through their counsel, transmitted a letter, refusing to comply with DRMS' investigative request. (*See Compl. Ex. E*) In this most recent letter, the AGO states that DRMS failed to provide "sufficient probable cause" or "present a complaint to MSH". DRMS is not required to do either of these things. As the P&A, DRMS may initiate investigations of facilities

---

[1] It should be noted that DRMS already had an ongoing investigation at North Mississippi Regional Center which has been ongoing since April 2021.

if there is probable cause to believe that there is potential abuse and neglect as DMH solely houses individuals that DRMS is mandated to protect. If DMH held a population of residents of which only a portion fell under DRMS' mandate, their position *might* be supported. However, every single one of the people currently under the care of the DMH are individuals with disabilities. Therefore, DRMS is mandated to protect each and every person in these facilities.

Most recently, November 17, 2021, a DRMS Advocate went to MSH campus on behalf of a client, K.R., to conduct an investigation and obtain medical records in regards to a potential abuse and neglect. The DRMS Advocate was immediately told that DRMS had to "write down" their probable cause before entry. The Advocate provided them a copy of a probable cause letter which outlined the necessary requisites for probable cause. (*See Compl. Ex. F*) MSH informed the Advocate that they were communicating with their "legal team" which prompted the Advocate to contact DRMS counsel. Immediately upon contact, the Human Resources Director, Bo Blankes, refused access, stating that since DRMS had counsel on the phone, they could not proceed without their counsel present. Ultimately, it has become clear that DMH and their legal counsel have instituted a blanket refusal of P&A investigatory access.

## **Congress Created the P&A as a Safeguard for People with Disabilities**

In response to national reports uncovering serious abuse and neglect of people with disabilities in segregated facilities, Congress created the Protection and Advocacy ("P & A") system, a national network of independent agencies that serve as a safeguard for people with disabilities. See generally, 42 U.S.C. § 15041 *et seq.* (developmental disabilities), 42 U.S.C. § 10801 *et seq.* (mental illness), 29 U.S.C. § 794e (other physical or mental impairments), collectively, the "P & A statutes."

Congress enacted these statutes "after concluding that state systems for protecting the rights of individuals with disabilities varied widely and were in many cases inadequate."[2]

As a condition of receiving federal funding for people with disabilities, the P & A statutes require each state to establish an effective protection and advocacy agency to protect the rights of individuals with disabilities and respond to allegations of abuse and neglect. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 247, 131 S. Ct. 1632, 1633-34, 179 L. Ed. 2d 675 (2011); *Disability Rights Wisconsin*, 463 F.3d at 722–23. There is a P&A agency in "every state and U.S. territory, as well as one serving the Native American population in the four corners region."[3] DRMS is designated by the Governor of the State of Mississippi as the protection and advocacy system for people with disabilities in Mississippi.

To carry out their responsibilities, "including the authority to 'pursue legal, administrative, and other appropriate remedies' on behalf of individuals with disabilities," P & A agencies have broad authority to access individuals, records, and facilities that provide care or treatment to individuals with disabilities, and authority to conduct investigations of suspected abuse or neglect of individuals with disabilities. 42 U.S.C. §10805(A)(1)(a). Investigation is a critical component of P&A access authority because it directly protects the most vulnerable from abuse, and assists in identifying those practices of a facility that pose the greatest danger to residents. DRMS monitors and investigates DMH facilities (and has for some time) because, in its experience, these facilities house individuals who are particularly vulnerable to abuse, neglect, and rights violations, yet they have fewer natural supports in place because they have limited contact with their families and support systems – if any at all. Many of these individuals are unaware of their rights, and very few

---

[2] *Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 722 (7th Cir. 2006); see also *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc*., 65 F. Supp. 3d 1312, 1317-21 (S.D. Ala. 2014).
[3] See National Disability Rights Network, NDRN Member Agencies, available at http://www.ndrn.org/en/ndrn-member-agencies.html (last visited on November 18, 2021).

4

are familiar with DRMS' role as the P&A Agency. During investigation visits, DRMS observes physical conditions, gathers information from staff, and then speaks privately with residents so they have an opportunity to confidentially discuss concerns about their experiences at the facility.

Thus, a P&A's first task is to be aware of any abuse or neglect that is occurring at facilities for individuals with mental illnesses and developmental disabilities. A P&A might discover such abuse or neglect of the safety or rights of residents from monitoring facilities for compliance[4], from its review of regular incident reports from facilities[5], from an anonymous or identified tip[6], from friends or family of individuals in facilities[7], directly from clients themselves[8], or even from newspaper articles or press report[9]. After receiving reports of abuse or neglect, a P&A must determine whether there is probable cause for a more thorough investigation[10]. As a result, if the P&A determines that there is probable cause to believe that abuse or neglect has occurred, it "shall" have a broad right of access to "all records," 42 U.S.C. §§ 10805(a)(4), 15043(a)(2)(I), (J), individuals with developmental disabilities, *see id.* § 15043(a)(2)(H), and facilities, *id.* § 10805(a)(3), that are relevant to an investigation.

DRMS has no law enforcement authority. It cannot charge the institutions it investigates with crimes. It is required to make its own assessment of whether there is probable cause to seek access to records and individuals, but its determination of probable cause will not result in criminal of civil enforcement proceedings by the state. When DMH denies DRMS access, such as was the case here, DRMS' recourse is to seek an order from a court allowing it to receive the access and

---

[4] 45 C.F.R. § 1386.22(g)(2); 42 C.F.R. § 51.42(c)(2),
[5] see, e.g., *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Ariz. 2000),
[6] see, e.g., *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 894 F. Supp. 424 (M.D. Ala. 1995), aff'd, 97 F.3d 492 (11th Cir. 1996),
[7] see, e.g., *Disability Rights Wisconsin, Inc. v. Wisconsin Department of Public Instruction,* 463 F.3d 719 (7th Cir. 2006),
[8] see, e.g., *Advocacy Center v. Stalder*, 128 F. Supp. 2d 358, 365 (M.D. La. 1999),
[9] , see, e.g., *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003)
[10] See, e.g., 42 U.S.C. §§ 10805(a)(1)(A), 15043(a)(2)(B); *Conduct of Protection and Advocacy Activities*, 42 C.F.R. § 51.31; *Access to Records, Facilities and Individuals with Developmental Disabilities*, 45 C.F.R. § 1386.22.

records[11]. DRMS and the other P&A's do not have independent authority to impose penalties or to otherwise compel compliance with state or federal laws

## II. ARGUMENT

DRMS seeks a preliminary injunction because DMH's continuing violation of federal and state law prevents DRMS from fulfilling its mandate as the protection and advocacy system for people with disabilities in Mississippi. A preliminary injunction is appropriate in this case because DRMS' legal authority to investigate alleged abuse and neglect at DMH facilities is clear under federal and state law, and the factors for issuing a preliminary injunction favor DRMS.

To obtain a preliminary injunction, a plaintiff must demonstrate the four following elements:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Strain v. Gulf Coast Shipyard Grp., Inc.,* 126 F. Supp. 3d 793, 796 (S.D. Miss. 2015)

**DRMS is Likely to Succeed on the Merits Pursuant to Federal Law**

DRMS has asserted claims pursuant to the federal P & A statutes from which DRMS' authority stems. The law surrounding P & A access authority is well-settled, and DRMS is likely to succeed on the merits of its claims. In order to satisfy the first element, likelihood of success on the

---

[11] In *Mississippi Protection & Advocacy System*, 929 F.2d 1054, 1059 (5th Cir. 1991), DRMS (then Mississippi Protection & Advocacy) brought a legal challenge to a state hospital's policy that restricted the P&A's access to residents with whom it did not have a signed retainer agreement. A P&A attorney had been visiting the facility to investigate allegations of abuse. Rather than cooperating with the investigation, the facility chose to restrict the representative's access and to encourage residents not to meet with him. The district court granted the P&A's requested injunction against the policy. In affirming the injunction, the Fifth Circuit explained that the DD Act
> "described the range of services to be provided by the protection and advocacy systems, it also states that the systems "must have the authority" to perform these services. The state cannot satisfy the requirements … by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority. Defendants' restrictive practices have reduced [the P&As] authority to the point that it can offer [its clients] only a fraction of the services to which they are entitled."

6

merits, plaintiffs must provide "evidence sufficient to support a prima facie case, but the evidentiary standard is not as high as would be required to entitle them to summary judgment." *Asbury MS Gray-Daniels, L.L.C. v. Daniels*, 812 F. Supp. 2d 771, 776 (S.D. Miss. 2011). To assess the likelihood of success on the merits, the court looks to "standards provided by the substantive law." *Id.*

Under the P&A Acts, DRMS is authorized to investigate suspected incidents of abuse and neglect of individuals with disabilities, 42 U.S.C. § 15043(a)(2)(B), as well as to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for . . . such individuals." 42 U.S.C. § 15043(a)(2)(A)(i). In enacting the original PAIMI Act, Congress recognized that P&As would need broad access to fulfill their mandate. Congress expressed its intent to grant P&As the fullest and broadest possible access: "The Committee recognizes the need for full access to facilities and clients and to their records in order to ensure the protection of mentally ill persons. It is the intent of the Committee that the [P&A system] have *the fullest possible access* to client records . . . ." S. Rep. 109, 99th Cong., Sess. 10 (1985) (emphasis added), reprinted in 1986 U.S.C.C.A.N. 1361, 1370.

Congress mandates this broad P&A access authority for two main purposes: (1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. 10802(2), 42 U.S.C. §10805(a)(3), 45 C.F.R. § 1386.22(f), 42 C.F.R. § 52.42(b), and (2) access for the purpose of monitoring the facility and the treatment of its residents. 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. §10805(a)(3), 45 C.F.R. § 1386.22(g), 42 C.F.R. § 51.42(c). DRMS asserts its rights to access the facilities and access the requested information to investigate allegations of abuse and neglect.

Congress has found that "individuals with mental illness are vulnerable to abuse and serious injury" as well as "neglect, including lack of treatment . . . ." 42 U.S.C. § 10801(a)(1) and (3). Moreover, Congress found that "[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C.

7

§10801(a)(4). Accordingly, Congress has granted P&As, such as DRMS, with the power to "investigate incidents of abuse and neglect of persons with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A).

PAIMI's implementing regulations reflect the intention for broad access as they clearly contemplate unaccompanied access to residents for purposes of investigating incidents of abuse and neglect. And, in such circumstances, consent from guardians is not required. "The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation." 42 C.F.R. § 51.42(b).

DRMS is likely to succeed on the merits because the PAIMI Act explicitly grants DRMS broad access to the requested records and facility. As set forth below, DRC determined there was probable cause to believe there is potential abuse and neglect in accordance with the criteria necessary to trigger DRMS' access authority under federal law. 42 U.S.C. § 10805(a). Defendant denied DRMS access because they disagreed that DRMS had the requisite probable cause; however, as the P&A, DRMS is the "final arbiter" of probable cause. Once DRMS determined probable cause to suspect abuse and neglect, it was entitled to access the records "promptly," 42 C.F.R. § 51.41(a), yet Defendant has withheld the records.

Similarly, for individuals with developmental disabilities, 42 U.S.C. § 15043(a)(2)(H) grants DRMS "access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided." For individuals with other physical or

8

mental impairments that substantially limit a major life activity, 29 U.S.C. § 794e (f)(2) extends to DRMS "the same general authorities" as in 42 U.S.C. § 1504.

Here, DRMS has informed DMH of its assertion of probable cause due to potential abuse and neglect at several of its facilities. DRMS has not only conducting many monitoring visits at these facilities, but also has several clients at each of these facilities. Given DRMS' observations at these facilities and reports from clients and their families, DRMS has probable cause to believe that there is abuse and neglect occurring at these facilities. Moreover, when DRMS attempted to conduct an investigation regarding a single resident at Mississippi State Hospital – investigatory access was *still* denied to the horror of both DRMS and the client's family.

## **DRMS Faces Imminent & Irreparable Harm**

DRMS meets this prong of the test simply because further refusal will deny DRMS of fulfilling its federal statutory mandate to protect and advocate for the rights of Mississippians with disabilities. In order to meet the burden of showing irreparable injury if not awarded an injunction, plaintiffs need to establish that they are under a substantial threat of harm which cannot be undone through monetary remedies. *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.1975). A showing of speculative injury is not sufficient; there must be more than an unfounded fear on the part of the movant. *Janvey v. Alguire*, 628 F.3d 164 (5th Cir.2010).

DRMS initiated its investigative authority because there was probable cause that there were incidents of abuse and neglect occurring in these facilities. The term *abuse and neglect* in and of itself should spark the requisite urgency and possibility of irreparable harm if further denial occurs. DRMS is likely to suffer irreparable harm if Defendant is not immediately enjoined from continuing to violate the PAIMI Act and other P&A statutes. Without prompt access to facilities and records, DRMS cannot conduct an effective investigation and fulfill its congressionally-mandated purpose to protect and advocate for individuals with mental illness. As time passes, witnesses may become

9

unavailable or their memories may fade, other evidence may become unavailable, records may be destroyed, and, importantly, other residents of the facility may continue to be exposed to the same conditions. "There is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm." *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.,* 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005).

Even if Defendant was to produce the requested records and allow the necessary access in the near future, DRMS requires a preliminary injunction mandating prompt access to any further records that DRMS requests in the future as investigations are ongoing until DRMS has had the opportunity to fully conduct an effective investigation. For DRMS to fulfill its congressionally-mandated role, its future access to records and facilities must not be delayed past the point of promptness. Such delays force DRMS to resort to otherwise unnecessary litigation, which drains DRMS staff's capacity to monitor and investigate the rights and safety of individuals with disabilities.

## The Balance of Equities Favors DRMS

The foregoing has demonstrated the severe harm Defendants' violations of the PAIMI Act and other P&A statutes cause to DRMS and the individuals with disabilities whom DRMS is charged to protect. Defendants will suffer no harm if they are enjoined from continuing to violate the P&A Acts.

Defendant will not be harmed by providing DRMS access to confidential records because the PAIMI Act and other P&A Acts require DRMS to maintain their confidentiality to the same extent as Defendants. *See* 42 U.S.C. § 10806(a). Nor must Defendants incur substantial expenses because Defendants may avoid costs of duplicating records by providing access electronically or in person, or by assessing reasonable costs to DRMS. *See* 42 C.F.R. § 51.41(e).

Further, Defendant has not acknowledged in its refusals **how** it will be harmed by permitting DRMS to discharge its mandate. DMH's primary objection seemed to be lack of "sufficient"

probable cause which should be wholly rejected upon a cursory glance at the relevant statutes. DRMS would urge this Court to concur with the Middle District of Louisiana when it held "the court sees no harm that would come to the defendants by forcing them to comply with provisions of the PAMII Act, a law adopted by the national legislature."*Advoc. Ctr. v. Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999).

## **The Public Interest is Served by Granting Injunctive Relief**

The foregoing demonstrates that Defendants' failure to promptly provide all requested records has prevented DRMS from fulfilling its congressionally-mandated purpose to protect and advocate for vulnerable individuals with disabilities. The public interest will be served by granting injunctive relief so that DRMS may conduct an effective investigation into suspected neglect in accordance with federal law. "The final major factor bearing on the court's discretion to issue or deny a preliminary injunction is the public interest. Focusing on this factor is another way of inquiring whether there are policy considerations that bear on whether the order should issue." Charles A. Wright et al., 11A Fed. Prac. & Proc. § 2948.4 (updated Apr. 2013). "The general flexibility of equitable powers is enhanced where, as here, the public interest is at stake." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987).

The public interest is always served by requiring parties to comply with federal statutes. That is likely because "[t]he public interest may be declared in the form of a statute." Wright et al., § 2948.4; see, e.g., Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 625 (5th Cir. 1985) ("in our consideration of the public interest at stake we note that the Mississippi Legislature recently enacted the Utility Reform Act of 1983"). Here, by passing the P&A Acts, Congress has already expressed that the public interest is satisfied by allowing P&A systems like DRMS access to discharge its investigative duties at DMH facilities.

It is in the public interest to issue the preliminary injunction without requiring a security bond because Defendants' burden in complying with federal law will be minimal and the law already obligates DRMS to maintain the records' confidentiality to the same extent as Defendants. In addition, waiving the security requirement is appropriate because DRMS is a non-profit organization advocating for individuals with disabilities. Several courts have waived the bond requirement in cases where plaintiffs seek "to enforce important federal rights or public interests[] arising out of comprehensive federal health and welfare statutes." *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991).

Here, several factors counsel in favor of waiver, including the strength of DRMS's claims, the lack of harm to Defendant, the strong public interest involved, and the financial hardship a bond would place on DRMS, a nonprofit protection and advocacy organization. In addition, waiving the bond requirement would align this Court with others to have considered the issue[12]. Forcing DRMS to resort to litigation has already consumed scarce DRMS resources devoted to protecting and advocating for individuals with disabilities who are vulnerable to abuse and neglect.

## **CONCLUSION**

Congress's use of the word "shall" in these statutes means that Defendant's duty to provide access to a P&A is mandatory, not discretionary. This Court should grant DRMS' motion for a preliminary injunction against Defendant's continuing violations of DRMS' rights under the PAIMI Act and other P&A statutes. DRMS has demonstrated it is likely to succeed on the merits of its claims for declaratory and injunctive relief under the PAIMI & other Acts and that it will suffer irreparable harm in the absence of preliminary relief. Furthermore, DRMS has demonstrated that the

---

[12] See *Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1176 ("the court feels justified in waiving the bond requirement in this case, where neither party raised the issue, it is unclear what 'security' [defendant] would require against improvident issuance of the preliminary injunction, and the plaintiff is a non-profit advocacy organization created by the state under federal law.").

12

balance of equities and the public interest favor prompt access so that DRMS may conduct an effective investigation into suspected neglect and discharge its federally mandated duties to protect and advocate for individuals with disabilities.

**RESPECTFULLY SUBMITTED**, this the 4th day of January, 2021.

                                                  **DISABILITY RIGHTS MISSISSIPPI**
                                                  */s Greta Kemp Martin*
                                                  GRETA KEMP MARTIN, MSB 103672

**Attorneys for Plaintiff:**
GRETA K. MARTIN, MSB #103672
KATHERINE HENDERSON, MSB #104522
VICTORIA M. ANDERSON, MSB #105964
DISABILITY RIGHTS MISSISSIPPI
5 OLD RIVER PLACE, SUITE 101
JACKSON, MISSISSIPPI 39202
Office: (601)968-0600
Facsimile: (601)968-0665

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been filed with this Court's electronic filing system which automatically sends notice to all Attorneys of record.

Dated: January 4, 2021

                                                   */s Greta Kemp Martin*
                                                   GRETA KEMP MARTIN, MSB #103672

**Attorneys for Plaintiff:**
GRETA K. MARTIN, MSB #103672
KATHERINE HENDERSON, MSB #104522
VICTORIA M. ANDERSON, MSB #105964
DISABILITY RIGHTS MISSISSIPPI
5 OLD RIVER PLACE, SUITE 101
JACKSON, MISSISSIPPI 39202
Office: (601)968-0600
Facsimile: (601)968-0665