**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DISABILITY RIGHTS MISSISSIPPI**                                                     **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 3:21-cv-726-CWR-FKB**

**MISSISSIPPI DEPARTMENT OF MENTAL HEALTH**                        **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S COMBINED**
**RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
**AND MOTION FOR SUMMARY JUDGMENT**

---

Disability Rights Mississippi is an independent organization charged with monitoring mental health programs and protecting the rights of the mentally ill. Under federal law, Disability Rights is authorized to investigate incidents of abuse or neglect and to access facility records. But before Disability Rights can investigate or access records, the law requires that it either receive a complaint of an incident of abuse or neglect or have probable cause to believe that an individual has been subjected to abuse or neglect.

The Mississippi Department of Mental Health ("DMH") and its facilities have worked with Disability Rights in the past to provide access to records, patients, and facilities in accordance with the law, and DMH and its facilities continue to do so. But Disability Rights now wants more. The instant dispute arose when Disability Rights demanded – without a complaint or probable cause – incident reports from DMH. After DMH refused to allow the fishing expedition, Disability Rights filed this lawsuit, accusing DMH of violating federal law by blocking access. It is Disability Rights' demands, however, that do not comply with the law.

Because Disability Rights cannot make the showings necessary for the extraordinary relief of a preliminary injunction, its motion should be denied. Further, because there is no genuine issue

of material fact and because DMH is entitled to judgment as a matter of law, summary judgment is appropriate as to all claims against DMH.

<u>**LAW AND FACTS**</u>

**A.     The Protection and Advocacy Statutes**

"A trio of federal statutes provide protection for individuals with mental illnesses collectively referred to as the 'P&A statutes.'" *J.H. ex rel. Gray v. Hinds County, Miss.*, Civil Action No. 3:11-cv-327-DPJ-FKB, 2011 WL 3047667, *1 (S.D. Miss. July 25, 2011). These statutes include the Protection for Advocacy for Individuals with Mental Illness Act ("PAIMI"), the Protection and Advocacy for Individuals with Developmental Disabilities Act ("PADD"), and the Protection and Advocacy of Individual Rights Act ("PAIR"). [1] Collectively, these P&A statutes "provide funding for the state to establish independent organizations … that monitor and protect the rights of the mentally ill." *Id.* As "the federally mandated and funded P&A system in Mississippi" under the P&A statutes, Disability Rights "is authorized under certain circumstances to access [] facilities, residents, and records" in order to carry out its mission. *Id.* These "certain circumstances," which are prerequisites to access to records, are similar under PAIMI, PADD, and PAIR.

PAIMI first established the P&A system framework to protect and advocate for the rights of individuals with mental illness, by providing for an independent entity to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10801(b)(2)(B). Under PAIMI, a P&A system's investigatory authority arises only upon either (1) a complaint or (2) probable cause that incidents have occurred:

---

[1] PAIMI is codified at 42 U.S.C. § 10801 *et seq.*, PADD at 42 U.S.C. § 15001 *et seq.*, and PAIR at 29 U.S.C. § 794e.

(1) [A P&A system shall] have the authority to –

    (A)    investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

42 U.S.C. § 10805(a)(1)(A).  Concerning access to records, PAIMI allows P&A systems to access all records of individuals who are clients of the system, so long as the client or his legal guardian authorizes such access.  42 U.S.C. § 10805(a)(4)(A).[2]  But for non-clients, the P&A system may access records only upon (1) receipt of a complaint or (2) probable cause that the non-client individual has been subjected to abuse or neglect or that the health or safety of the individual is in serious and immediate jeopardy.  *See* 42 U.S.C. § 10805(a)(4)(B-C).  Notably, if a non-client has a legal guardian other than the state, then *before* the P&A system can access the non-client's records, the system must first contact the legal guardian to offer assistance and the guardian must then refuse or fail to act.  42 U.S.C. § 10805(a)(4)(C).

    Like PAIMI, PADD authorizes P&A systems to investigate upon (1) a complaint or (2) probable cause as to incidents of abuse or neglect: "the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."  42 U.S.C. § 15043(a)(2)(B).  And PADD's prerequisites for access to records mirror those of PAIMI.  P&A systems may access all records of system clients; but for non-clients, the P&A system may only access records upon (1) receipt of a complaint "about the individual with regard to the status or treatment of the individual" or (2) "probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C. § 15043(a)(2)(I)(i); § 15043(a)(2)(I)(ii)(III); 15043(a)(2)(I)(iii)(II).  And if the non-client has a legal guardian other than the state, the P&A system must first contact

---

[2] The regulations implementing PAIMI utilize the same language and requirements in providing for P&A system access to records.  *See* 42 C.F.R. § 51.41(b).

the guardian to offer assistance and the guardian must refuse or fail to act before access to records is authorized.  42 U.S.C. 15043(a)(2)(I)(iii).

PAIR piggybacks on the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), providing P&A systems "the same general authorities, including the authority to access records" as set forth in the DD Act.  29 U.S.C. § 794e(f)(2).  And just like PAIMI and PADD, regulations enacted under the authority of the DD Act require that before access is authorized for non-client records, a P&A system must (1) receive a complaint or (2) determine "that there is probable cause to believe that such individual has been subject to abuse and neglect."  45 C.F.R. § 1326.25(a)(2); *see also* 45 C.F.R. § 1326.1.  In the case of a non-client who has a legal guardian – just as with PAIMI and PADD – the P&A system must first contact the individual's guardian and offer assistance, and the guardian must refuse, before access to records is authorized.  45 C.F.R. § 1326.25(a)(3).

Thus, the P&A statutes all employ the same basic rules regarding P&A system access to records.  If the individual whose records are sought is a system client, the P&A system may access those records at any time.  *See* 42 U.S.C. § 10805(a)(4)(A); 42 U.S.C. § 15043(a)(2)(I)(i); 45 C.F.R. § 1326.25(a)(1).  But if the individual is not a client, the requirements differ, depending on whether the individual has a legal guardian.  To access records of a non-client who has no guardian, or whose guardian is the state, the P&A system must first (1) receive a complaint with respect to that individual or (2) have probable cause to believe that the individual has been subject to abuse or neglect.  *See* 42 U.S.C. § 10805(a)(4)(B)(i-iii); 42 U.S.C. § 15043(a)(2)(I)(ii)(I-III); 45 C.F.R. § 1326.25(a)(2)(i-iii).  To access records of a non-client who does have a guardian, the P&A system must first (1) receive a complaint with respect to that individual or (2) have probable cause to believe that the individual has been subject to abuse or neglect, then must contact the non-

client's legal guardian and offer assistance, and the guardian must finally refuse to provide consent. If these prerequisites are not met, the P&A system is not entitled to access records. *See* 42 U.S.C. § 10805(a)(4)(C)(i-iii); 42 U.S.C. § 15043(a)(2)(I)(iii)(I-V); 45 C.F.R. § 1326.25(a)(3)(i-iii).

## B.    Facts

On August 17, 2021, Disability Rights sent a letter to Mississippi State Hospital – a DMH facility – "requesting to receive incident reports from Mississippi State Hospital for the last thirty (30) days and on a regular, scheduled basis moving forward." *See* Am. Compl. at Ex. A [Dkt. 2-1]. The letter made no mention of probable cause; nor did the letter identify any specific incident of alleged abuse or neglect or any specific individual who may have been abused or neglected. Rather, Disability Rights summarily stated that it "has authority to investigate abuse and neglect" and "has access to a wide range of records as part of its investigatory authority." *Id.* Disability Rights asked that Mississippi State Hospital "work with the [Disability Rights] Advocate who regularly monitors this facility to determine a schedule for receiving this documentation on a scheduled basis moving forward." *Id.*

By letter dated August 27, 2021, DMH responded, denying Disability Rights' request because it did not comply with the P&A statutes, as it was not based on a complaint or probable cause.[3] *See* Am. Compl. at Ex. B [Dkt. 2-2]. Quoting PAIMI, DMH noted that Disability Rights' investigative authority begins when (1) it receives a complaint, or (2) probable cause exists:

> While [Disability Rights] does have authority to access records and/or incident reports, that authority arises in only two instances: "[1] if the incidents are reported to the system or [2] if there is probable cause to believe that the incidents occurred." *See* 42 U.S.C. § 10801(b)(2)(B).

---

[3] The response letter was authored on behalf of Mississippi State Hospital and DMH by Special Assistant Attorney General MaCall Chastain of the State Agencies Division of the Mississippi Attorney General's Office, who is assigned to DMH.

*Id.* As DMH explained, the request from Disability Rights fit neither parameter: "notably, [Disability Rights] does not rely on either a complaint or probable cause in its request." *Id.* Although DMH denied the request, DMH offered to reevaluate the request for incident reports if Disability Rights could provide supporting complaints or probable cause. *Id.*

On or about September 17, 2021, the parties conferred by telephone in an unsuccessful attempt to resolve the dispute. *See* Am. Compl. at ¶ 23. On September 21, 2021, counsel for Disability Rights e-mailed DMH to provide additional documentation. *See* Exhibit 5, Martin E-mail Sept. 21, 2021. In that e-mail, Disability Rights acknowledged that its request was not based on any complaint or probable cause, but rather, solely on the plain language of PAIMI:

> Of course, it is our position that our request is supported by the plain language of PAIMI Act and regulations and doesn't require supporting case law. **Incident reports, by definition, are reports when something did not go accordingly – we have the authority to review those for any indication of potential abuse and neglect** as stated in the PAIMI statutes.

*Id.* (emphasis added). But Disability Rights' position that incident reports are *per se* accessible is not supported by PAIMI or the other P&A statutes.

By letter dated October 18, 2021, DMH maintained its denial of Disability Rights' demand for production, monthly and in perpetuity, of all Mississippi State Hospital incident reports. *See* Am. Compl. at Ex. C [Dkt. 2-3]. DMH again explained that while Disability Rights may access incident reports under the P&A statutes, that authority arises only when Disability Rights receives a complaint or when probable cause exists to believe that incidents of abuse or neglect have occurred:

> As we have previously stated, we agree that [Disability Rights] does have authority to access incident reports. However, it is our view that this authority arises in only two instances: "[1] if the incidents are reported to the system or [2] if there is probable cause to believe that the incidents occurred." *See* 42 U.S.C. § 10801(b)(2)(B).

*Id.* at 1. Though DMH denied the request, its letter again assured Disability Rights that DMH would provide access to the records if Disability Rights could "respond with a complaint or probable cause justifying a request for incident reports, including but not limited to, a date the alleged incident occurred and an individual specified in its request." *Id.* But instead of providing factual support, Disability Rights expanded its demands.

Unhappy with the denial, Disability Rights *only then* made a determination that probable cause existed "to open a systemic investigation of DMH facilities." Am. Compl., [Dkt. 2] at ¶¶ 24-25. In the Amended Complaint, Disability Rights contends – for the first time – that this determination was based on (1) information obtained during the course of regular monitoring, (2) complaints from Disability Rights clients across DMH facilities, (3) anonymous information from DMH staff, and (4) "concerns/observations that COVID protocol and precautions had not been followed." *Id.* at ¶ 25. But the Amended Complaint provides no factual information concerning what was observed during monitoring, what complaints have been received, what information staff has provided and how that reveals potential abuse or neglect, or how COVID protocols could amount to abuse or neglect. Moreover, neither these assertions nor any factual bases were ever communicated to DMH prior to the filing of this lawsuit.

On October 15, 2021, Disability Rights sent boilerplate letters to 10 different DMH facilities, demanding production of incident reports for several months.[4] *See generally* Am. Compl. at Ex. D [Dkt. 2-4]. Each letter was entitled "PROBABLE CAUSE NOTICE" and employed the same language, beginning with a general allegation that Disability Rights "has probable cause to believe that there is potential abuse and/or neglect at [insert facility name]." *See,*

---

[4] Those facilities are Boswell Regional Center, North Mississippi Regional Center, South Mississippi Regional Center, North Mississippi State Hospital, Ellisville State School, South Mississippi State Hospital, Central Mississippi Residential Center, Mississippi State Hospital, Hudspeth Regional Center, and East Mississippi State Hospital. *Id.*

*e.g., id.* at p. 1. Without any factual basis, each letter summarily stated that Disability Rights "will be conducting an investigation into this facility as our monitoring has led us to believe that there is consistent and ongoing abuse and/or neglect." *Id.* The letters demanded production of all incident reports from each of the 10 facilities for August, September, and October of 2021. *Id.* at 2. Notably, according to the letters, Disability Rights' monitoring was the sole basis for the purported investigation, but Disability Rights now asserts that the investigation was also based on complaints, anonymous information from staff, and COVID concerns. Although the letters mentioned "monitoring," Disability Rights provided no specific facts, complaints, or other information that would support a finding of probable cause. *Id.* at 1. Each letter warned that Disability Rights "is the final arbiter of probable cause for the purpose of triggering its authority to access and this decision is not subject to review." *Id.*

By a single letter dated October 28, 2021, DMH responded to the 10 "probable cause notices" and again declined to produce incident reports, because the boilerplate letters failed to provide "individualized probable cause for any of the programs" and because Disability Rights "did not provide the necessary foundation of identifying probable cause that an incident, abuse, or neglect *has occurred*." *See* Am. Compl. at Ex. E [Dkt. 2-5] at p. 2 (emphasis in original). DMH recognized the demands as "a broad, dragnet carte blanche attempt to require DMH's programs to regularly report incident reports to [Disability Rights] when there is no justification for doing so," and reiterated its position that Disability Rights' authority does not extend to "regulatory reporting of every incident report that may have occurred for the specified time period and on an ongoing basis thereafter." *Id.* Even still, DMH again offered that it would cooperate if Disability Rights could provide some basis for the demands in complaint or facts supporting probable cause. *Id.*

On November 17, 2021, a Disability Rights advocate met with officials at Mississippi State Hospital. According to the Amended Complaint, the advocate sought to "conduct an investigation and obtain medical records in regards to a potential abuse and neglect" involving a Disability Rights client. Am. Compl., [Dkt. 2] at ¶ 30. But the letter documenting Disability Rights' request for access to records was not limited to a single client. That letter, presented by the advocate, contained the same boilerplate "probable cause" assertion as the previous 10 letters and an overbroad demand for "access to incident reports, nurse's notes, doctor's notes, shift change logs, staffing schedule, and surveillance in the possession of Mississippi State Hospital." *See* Exhibit 1, Disability Rights Letter, Nov. 17, 2021, at p. 2.[5] During that meeting, the advocate contacted Disability Rights' counsel by telephone, who asserted that Disability Rights was not required to provide any basis for its probable cause determination to Mississippi State Hospital officials. *See* Exhibit 3, Declaration of Bo Blanks. Although Mississippi State Hospital officials attempted to work with Disability Rights and its advocate, the advocate was instructed to leave by Disability Rights Executive Director Polly Tribble, whom the advocate had contacted by telephone. *Id.*

## ARGUMENT

### A. Disability Rights' motion for preliminary injunction should be denied.

A preliminary injunction is an "extraordinary" form of relief. *Trinity USA Operating, LLC v. Barker*, 844 F.Supp.2d 781, 785 (S.D. Miss. 2011) (citation omitted). Such a request "represents to the court that [a plaintiff's] case is so particularly unusual, the strength of its case so particularly

---

[5] Disability Rights asserts in its Amended Complaint and again in its Motion for Preliminary Injunction that its advocate delivered a letter dated November 4, 2021, when meeting with Mississippi State Hospital officials on November 17, 2021. *See* Am. Compl., [Dkt. 2] at ¶ 31; Motion for Preliminary Injunction, [Dkt. 8] at p. 3. A copy of the November 4 letter is attached as Exhibit F to the Amended Complaint. *See* Am. Compl. at Ex. F, [Dkt. 2-6]. However, DMH asserts that the advocate hand-delivered not the November 4 letter, but a letter dated November 17, a copy of which is attached hereto as Exhibit 1. The only differences in the two letters appear to be the dates and inclusion of the signature of Disability Rights Executive Director Polly Tribble.

great, and the risk of incurable injury so particularly unbearable that the promise of a typical day in court ultimately will serve no practical purpose." *Id.* "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To obtain a preliminary injunction, the movant must make four showings:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that irreparable injury will result if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Id.* at 621 (citation omitted). This extraordinary relief "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). "There is no balancing test; the movant must satisfy each requirement before the Court will grant the requested relief." *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, 815 F.Supp.2d 966, 971 (S.D. Miss. 2011).

Where a P&A system moves for preliminary injunction, this Court has recognized that "the P&A statutes reflect a strong public interest in protecting those with mental illnesses, and limiting a P&A service from fully exercising its authority places residents with mental illnesses at increased risk of harm." *Gray*, 2011 WL 3047667 at *2. There, this Court noted:

> a host of federal authority holds that irreparable harm exists when a P&A system is unable to fulfill its mandate under federal law, that the threatened injury of denying [a preliminary] inunction outweighs the harm caused by the injunction, and that granting the injunction would not disserve the public interest.

*Id.* "Thus, the issue is whether [the P&A system] has established a substantial likelihood of success on the merits of the … disputed issues." *Id.*

*Gray*, however, is not analogous to the facts of the instant dispute. In *Gray*, Hinds County allegedly blocked Disability Rights' access to children who were imprisoned at the Henley-Young Juvenile Justice Center. *Id.* at 1. There, Disability Rights brought a class action on behalf of a twelve-year-old male ("J.H.") who was denied mental health care, was subjected to excessive confinement to a cell, and was verbally abused. *See J.H. ex rel. Gray v. Hinds County, Miss.*, Civil Action No. 3:11-cv-327-DPJ-FKB, Complaint for Injunctive Relief, [Dkt. 1] at ¶¶ 3, 19, 23, 28, 32. Disability Rights' complaint in *Gray* cited J.H.'s complaints and other specific incidents of alleged abuse or neglect. *Id.*

But unlike Hinds County, DMH has not blocked Disability Rights' access to individuals. And unlike the access sought in *Gray*, Disability Rights' current demands for incident reports do not comply with the P&A statutes because they are not based on complaints or probable cause. Most notably, the threatened injury in *Gray* was evident – incarcerated youth were allegedly being abused or neglected, and Disability Rights presented specific allegations that warranted investigation. Here, Disability Rights provides no complaints and mentions no specific incidents of alleged abuse or neglect. To the contrary, no factual basis for any threatened injury has been presented.

Accordingly, unlike in *Gray* where substantial likelihood of success was the determining factor for preliminary injunction analysis, all four factors must be considered here.

### 1. Disability Rights is not substantially likely to prevail on the merits.

Disability Rights argues that DMH violated the P&A statutes by denying Disability Rights' access to records. But DMH has not violated the law; rather, DMH has stood firm in ensuring that Disability Rights follows the law in demanding access to records. Because its demands for incident

reports are not supported by a complaint or probable cause and are not particularized to an incident or individual, Disability Rights is not entitled to access the records.

Under the P&A statutes, Disability Rights' investigative authority arises only (1) when it receives a complaint, or (2) when it determines that probable cause exists to believe an incident of abuse or neglect has occurred. Here, neither prerequisite is satisfied. Without a proper foundation to investigate, Disability Rights simply hoped to embark on a fishing expedition by creating a perpetual, monthly reporting requirement for DMH to forward all Mississippi State Hospital incident reports. When that initial demand was denied, Disability Rights then issued letters to 10 DMH facilities, stating – summarily and with no factual support – that it had determined that probable cause existed to justify accessing incident reports from all 10 facilities over several months. DMH denied those demands because they, too, failed to comply with the P&A statutes. Even so, DMH maintained that if Disability Rights could properly support its demands with either a complaint or facts that would support probable cause, DMH would allow the requested access.

DMH does not dispute that the 10 facilities which received demand letters from Disability Rights are "facilities" as defined by the P&A statutes. *See, e.g.,* 42 U.S.C. § 10802(3). Nor does DMH dispute that the incident reports sought by Disability Rights constitute "records" as contemplated by the P&A statutes. *See, e.g.,* 42 C.F.R. § 51.41 (c). Thus, the sole issue before this Court is whether DMH violated the P&A statutes by denying access to incident reports or whether Disability Rights' demands do not comport with the P&A statutes. As explained herein, the latter is true.

        **i.**        **Although the P&A system is the "final arbiter," a finding of probable cause must have some basis in fact and must be particularized to an incident or individual.**

The P&A statutes are consistent in that before a P&A system may investigate or access records, the system must have either (1) a complaint or (2) probable cause that an incident of abuse or neglect occurred. Disability Rights argues that it is the final arbiter of probable cause as contemplated by the P&A statutes. And in the 10 demand letters issued to DMH facilities, Disability Rights warned that its determination of probable cause "is not subject to review." *See e.g.*, Am. Compl. at Ex. D [Dkt. 2-4], p. 2. But while P&A systems are considered the final arbiters of probable cause, such a finding must have a factual basis and must be particularized to an incident or individual. Although a facility cannot substitute its judgment for a P&A system's in determining whether a set of facts are sufficient to show probable cause, a facility may seek judicial review of a P&A system's probable cause determination where no factual basis exists.

PAIMI defines probable cause as "reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect." 42 C.F.R. § 51.2. PAIR and the DD Act define probable cause as "a reasonable ground for belief that an individual with developmental disability(ies) has been, or may be, subject to abuse or neglect, or that the health or safety of the individual is in serious and immediate jeopardy." 45 C.F.R. § 1326.19.

In its letter demands, Disability Rights stated emphatically that it, "as the P&A, is the final arbiter of probable cause for the purpose of triggering its authority to access and this decision is not subject to review," citing as authority *Advocacy Inc. v. Tarrant County Hospital District*, No. 4:01-cv-062-BE, 2001 WL 1297688 (N.D. Tex. Oct. 11, 2001). *See e.g.,* Am. Compl. at Ex. D, [Dkt. 2-4], p. 2. But the probable cause in *Advocacy Inc.* was supported by facts. There, a Texas P&A system received a report that a hospital patient died while "restrained or in seclusion." *Advocacy Inc.*, 2001 WL 1297688 at *1. The facility denied the P&A system's request for access

to the decedent's medical records, maintaining that "death while in restraint or seclusion did not in and of itself suggest abuse or neglect" and arguing that no probable cause existed for access to records. *Id.* at *1, 3. The court rejected the facility's argument that the facts were not sufficient, holding that because "the P&A system is the final arbiter of probable cause as between itself and the subject facility, the facility may not refuse access to records merely because it disagrees with the existence of probable cause." *Id.* (citing *Ariz. Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 692-93 (D. Ariz. 2000)).

But the P&A system's determination of probable cause in *Advocacy Inc.* is not analogous to Disability Rights' determination here. In *Advocacy Inc.*, the purported probable cause was supported by a factual, particularized basis – the system received a report of a death of a particular individual and, in response, sought to review records related to that individual. *Id.* at *1. Indeed, *Allen* – the seminal "final arbiter" case – and its progeny further illustrate that probable cause determinations must be based in fact and must be particularized as to incidents of abuse or neglect or individuals who were subjected to abuse or neglect, just as in *Advocacy Inc.* and as in *Gray*, discussed *supra*. Here, to the contrary, Disability Rights points to no incidents of abuse or neglect or any individuals who may have been subjected thereto. Rather, Disability Rights seeks to conduct a widespread "systemic investigation" of Mississippi's entire mental health system, with no particularized facts that would support a finding of probable cause.

In *Allen*, an Arizona P&A system sought records from the Arizona Department of Health Services after determining that probable cause of abuse or neglect existed where the system received reports that 19 individuals had died while receiving behavioral health services. *Allen*, 197 F.R.D. at 691. The provider eventually produced records pertaining to 16 individuals but refused to produce records for the other 3 because it – improperly – disagreed that probable cause

existed in those 3 cases. *Id.* Elsewhere, an Iowa P&A system sought and was entitled to access records related to a juvenile resident who died while being restrained at a psychiatric institution after the system became aware of the incident. *See Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1153 (N.D. Iowa 2001). In *Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303 (D. Conn. 2003), after becoming aware of the suicide deaths of five prison inmates believed to be mentally ill, a Connecticut P&A system sought and was entitled to access records concerning those inmates. *Id.* at 307-08. In *Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F.Supp.3d 873 (S.D. Ohio 2019), an Ohio P&A system was entitled to access records after determining that probable cause existed based on its receipt of 5 reports regarding a facility's use of restraint techniques on four youth. *Id.* at 878. In yet another case, an Idaho P&A system sought and was entitled to access records pertaining to the death of an involuntarily-committed patient at a local hospital. *Matter of Disability Rights Idaho Request for Ada County Coroner Records Relating to the Death of D.T.*, 168 F.Supp.3d 1282, 1285 (D. Idaho 2016).

In each of these cases, the court held that the P&A system was the "final arbiter" of probable cause despite the facilities' disagreement as to the sufficiency of the factual basis. Indeed, where P&A systems seek access to records based on a determination of probable cause and that determination is supported by facts and particularized to incidents or individuals, courts have "overwhelmingly agreed" with the principle that the P&A system is the "final arbiter of probable cause." *Armstrong*, 266 F.Supp.2d at 321. But that's not the case here. DMH does not dispute that the facts cited by Disability Rights aren't sufficient to support probable cause; DMH argues that Disability Rights has set forth no factual basis whatsoever.

### ii. Courts have rejected probable cause determinations made by P&A systems which are not supported by fact or which are not particularized to an incident or individual.

What happens if there is no factual basis for a P&A system's determination of probable cause? Or where the probable cause is so general in nature that it is not particularized to a specific individual or incident? Judicial review – and rejection – is appropriate. "In situations regarding abuse and neglect, the court remains the 'final arbiter' with respect to determining whether an adequate basis for probable cause exists." *Charlotte-Mecklenburg Board of Education v. Disability Rights of North Carolina*, 430 F.Supp.3d 74, 82 (W.D. N. Car. 2019) (quoting *Developmental Disabilities Program*, 80 FR 44796-01, 2015 WL 4504331 (July 25, 2015)).

In *Disability Law Center v. Discovery Academy*, No. 2:07-cv-00511-CW-PMW, 2010 WL 55989 (D. Utah Jan. 5, 2010), a Utah P&A system initiated an investigation and sought records after a facility resident was "manually restrained for four hours and was bruised from it." *Id.* at *1. The facility cooperated and provided requested records. *Id.* But after the resident left the facility, the P&A system continued to request interviews and records of other residents, unrelated to the injured resident's incident. *Id.* After months of cooperation, the facility finally denied further requests. *Id.*

In addressing the dispute, the Utah court first noted that under PAIMI, a P&A system has authority to investigate "incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." *Id.* (quoting 42 U.S.C. § 10803(1)(A) (emphasis omitted). The court found that while the initial investigation into the injured resident's incident was proper, that investigation became moot once he was removed from the facility. *Id.* The P&A system, though, argued that it could continue an investigation into "general operational misconduct." *Id.* at 2. In other words, the

investigation became "not about one student, but rather the [system's] attempt to investigate a credible allegation that students at [the facility] were subject to improper restraint and seclusion as a matter of course." *Id.*

The court rejected the P&A system's argument, holding that P&A system investigations and access to records must be tied to "individuals, not general operations." *Id.* at *3. Quoting PAIMI, the court noted that "the particular language that authorizes access to records is couched specifically in terms of records of 'individuals.'" *Id.* (quoting 42 U.S.C. 10805(a)(4)(B)). The court further elaborated why particularization is important and necessary:

> **The focus of the statutory protection is upon the protection of individuals for whom there is either a complaint or a finding of probable cause to believe "such individual" has been subjected to abuse. Nothing in the statute suggests a general investigative power absent reference to an identified individual.** The limitations in the statute and the regulations implementing it are necessary to avoid warrantless searches that are otherwise prohibited by the Fourth Amendment. To avoid constitutional infirmity, the act must be carefully crafted to address the specific concerns raised by Congress and must avoid granting "almost unbridled discretion" to the agency charged with carrying out the congressional mandate. To meet this requirement, the act must provide "certainty and regularity in its application" that "provides a constitutionally adequate substitute for a warrant." The **PAIMI meets these requirements by imposing a requirement for either a complaint or a finding of probable cause as to a specific individual.**

*Id.* (citations omitted, emphasis added).

To support its finding of probable cause, the P&A system in *Disability Law Center* relied solely on an affidavit of its managing attorney, which stated that the system:

> received a credible complaint of abuse and neglect at [the facility]. In the process of investigating the individual complaint, [the system's] staff learned of additional credible allegations of abuse and neglect in the manner [the facility] general [*sic*] applied restraint and seclusion procedures on its students.

*Id.* The court, however, rejected the system's argument that it was not required to provide any factual support because it was the "sole arbiter of whether probable cause exists." *Id.* at *5. The court noted that the system's attorney failed "to provide any factual support for what the allegations were, who made the allegations, what the substance of the complaint was or the name of the supposed victims of the abuse." *Id.* Even more, the system produced no evidence that it communicated to the facility its factual basis for finding that probable cause existed or "that it made such a finding at all." *Id*

The *Disability Law Center* court reasoned that if the P&A system were allowed to proceed without a factual basis for probable cause, the system would have "essentially unlimited access" which would allow the system "to determine, without any checks or balances of its demand, when it may conduct what is effectively a search and seizure of the [facility's] records and information." *Id.* at *5-6. Importantly, the court noted the difference in its facts and those presented in *Allen* and its progeny:

> This is not a case where the [P&A system] has come forward with factual support for a probable cause finding and the defendant is arguing that the facts are insufficient. This is not a case in which the defendant is asserting that it is the final arbiter of whether there is probable cause. Rather, in this case the defendant is asserting that the court is the arbiter of whether the [P&A system] has a factual basis for its unsupported assertion that probable cause exists.

*Id.* at 5. The court also held that the P&A system's investigation into "general operational misconduct" exceeded its authority under PAIMI because the system did not identify "the individuals about whom it is concerned or even a factual basis to believe incidents of abuse and neglect are occurring." *Id.* at *6.

The Utah court is not alone in refusing a P&A system's access where there is no evidence tied to a specific individual or incident to support a probable cause determination. In *Ohio Legal*

*Rights Service v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877 (S.D. Ohio 2005), the district court found that a P&A system had a factual basis for its probable cause determination where it sought access to records concerning a child injured by the use of seclusion and restraint techniques. *Id.* at 886-87. But when the system sought further access to all of the facility's seclusion and restraint logs to collect data for a statewide database, the court denied access because the request did not follow PAIMI's prerequisites. *Id.* at 887. And though the system later determined that probable cause existed based on newspaper articles, the system could not show that the probable cause determination was made "at the time [the system] made its requests." *Id.*

Likewise, in *Charlotte-Mecklenburg*, a North Carolina district court rejected a P&A system's determination of probable cause as to all students at a school for cognitively-disabled children. *Charlotte-Mecklenburg*, 430 F.Supp.3d at 76-77. There, the P&A system's staff members observed students who did not require wheelchairs being transported throughout the school in wheelchairs. *Id.* at *78. The system argued that because wheelchairs are a form of restraint, there was probable cause to access the records of all school students. *Id.* at 83. The court rejected the system's determination, finding that the system's knowledge that "many" of the students transported by wheelchair did not require a wheelchair was insufficient to support a probable cause determination as to "all" students. *Id.*

Moreover, the requirement that an investigation must be particularized with respect to an incident or an individual comports with the P&A statutes' prerequisites concerning access to non-client records. As noted by the Utah court in *Disability Law Center*, before a P&A system can access non-client records, it must either (1) receive a complaint with respect to that individual or (2) find probable cause "to believe that such individual has been subject to abuse or neglect." *See Disability Law Center*, 2010 WL 55959 at *3 (quoting 42 U.S.C. § 10805(a)(4)(B)(iii)). And if

the non-client has a guardian other than the state, the P&A system must contact the individual's legal guardian to offer assistance, and the guardian must fail or refuse to act. 42 U.S.C. § 10805(a)(4)(C)(i-iii). Necessarily, these statutory prerequisites can only be satisfied if the requests are particularized to incidents or individuals.

### iii. Disability Rights' demands and "systemic investigation" do not comport with the P&A statutes.

Disability Rights' demands for access to DMH incident reports are not based on receipt of a complaint or probable cause supported by a factual basis. Moreover, the demands – and the purported "systemic investigation" – are not particularized to specific individuals or alleged incidents. Because the statutory prerequisites are not satisfied, Disability Rights is not entitled to access the incident reports.

When Disability Rights first demanded incident reports from Mississippi State Hospital, it did so with no mention of a complaint, with no mention of probable cause, with no factual basis that would support probable cause, and with no particularization to an individual or an alleged incident. *See* Am. Compl. at Ex. A [Dkt. 2-1]. Instead, Disability Rights simply sought "to receive incident reports from [the facility] for the last thirty (30) days and on a regular, scheduled basis moving forward. *Id.* Though Disability Rights stated generally that it "has the authority to investigate abuse and neglect in any setting where a person with mental illness receives services," the letter contained no explanation of the scope or subject of any purported investigation. *Id.* DMH rightfully denied that request, citing PAIMI and noting that Disability Rights' investigative authority only arises when (1) incidents are reported to the system, or (2) probable cause exists to believe that incidents of abuse or neglect occurred. *Id.* at Ex. B [Dkt. 2-2].

In denying the request, DMH stated that "a blanket request for every incident report on a regularly scheduled basis is unduly burdensome and outside the scope of Disability Rights' access

to records and reports." *Id.* Indeed, if a P&A system's request for records must be based on a complaint or on particularized probable cause that exists at the time the request is made, it necessarily follows that a request for future incident reports, to be produced monthly and in perpetuity, are outside of a system's authority under the P&A statutes. *See Ohio Legal Rights Service*, 365 F.Supp.2d at 887. DMH was right to deny Disability Rights' initial request, addressed to Mississippi State Hospital, by letter on August 27, 2021, and again on October 18, 2021.

Dissatisfied with the initial denial, Disability Rights then sent letters entitled "Probable Cause Notice" to 10 different DMH facilities, seeking production of all incident reports for August, September, and October 2021. *See* Am. Compl. at Ex. D, [Dkt. 2-4]. Each letter began with the statement that Disability Rights "has probable cause to believe that there is potential abuse and/or neglect at" each facility. *See, e.g., id.* at p. 1. And each letter contained a general statement that Disability Rights' "monitoring has led us to believe that there is consistent and ongoing abuse and/or neglect." *Id.* Notably, the letters contained no mention of any complaints. Likewise, Disability Rights' November 17, 2021 demand for "access to incident reports, nurse's notes, doctor's notes, shift change logs, staffing schedule, and surveillance in the possession of Mississippi State Hospital" was not supported by a complaint or probable cause; nor was that demand particularized to any incident of abuse or neglect or individual subjected to abuse or neglect.

These generalized, blanket assertions of probable cause are insufficient under the P&A statutes. Like the probable cause determination rejected by the Utah court in *Disability Law Center*, Disability Rights provided DMH with no "factual support for what the allegations were, who made the allegations, what the substance of the complaint was or the name of the supposed victims of the abuse." *Disability Law Center*, 2010 WL 55989 at *5. And even further, Disability

21

Rights has not satisfied the P&A statutes' requirement of notification to guardians for access to non-client records. *See, e.g.*, 42 U.S.C. § 10805(a)(4)(B-C). Disability Rights' demands for incident reports do not comport with its authority to access records under the P&A statutes.

Moreover, as explained in *Disability Law Center*, P&A systems have no authority under the P&A statutes to conduct a "systemic investigation" of facilities:

> Indeed, the [P&A system's] attempt to expand the scope of the investigation to general operational misconduct without identifying the individuals about whom it is concerned or even a factual basis to believe incidents of abuse and neglect are occurring exceeds the carefully crafted limitations imposed in the PAIMI and thus exceeds the authority granted to the [P&A system] by the statute.

*Id.* at 6. Indeed, under PAIMI, investigative authority for P&A systems is tied to *incidents* of abuse or neglect – a system has "authority to investigate *incidents* of abuse and neglect of individuals with developmental disabilities if the *incidents* are reported to the system or if there is probable cause to believe that the *incidents* occurred." 42 U.S.C. § 15043(a)(2)(B) (emphasis added). Like the "investigation into general operation misconduct" in *Disability Law Center*, Disability Rights' purported "systemic investigation" exceeds the authority of the P&A statutes because it is not based on particular incidents. Instead, Disability Rights attempts to justify its "systemic investigation" with broad, sweeping generalizations such as "information obtained during the course of … routine and regular monitoring, complaints from … clients across DMH facilities, and anonymous information provided by staff … compounded with concerns/observations that COVID protocol and precautions had not been followed." If Disability Rights had specific facts that warranted a legitimate investigation, or even facts that support these broad generalizations, it would have said so.

   **iii.  When Disability Rights does have probable cause supported by facts, it presents those facts to DMH, and DMH cooperates.**

Further illustrating that its demands for incident reports are not proper, Disability Rights acts differently when it makes a probable cause determination based in fact and particularized to an incident or individual. When probable cause actually exists, Disability Rights presents the facts in writing to DMH, and DMH cooperates.

On November 10, 2021, Disability Rights issued a letter to South Mississippi Regional Center ("SMRC"), entitled "Probable Cause Notice & Initiation of Investigation – … SMRC Resident…" *See* Exhibit 3, Disability Rights Letter, Nov. 10, 2021.[6] In that letter, Disability Rights identified an individual who had been subjected to suspected abuse or neglect and explained that it was "investigating alleged abuse/neglect as it pertains to [name redacted] as the subject of this investigation as well as other residents of" the resident's particular housing unit. *Id.* In a section entitled "Findings," Disability Rights provided four full paragraphs of factual allegations detailing the individual's condition and need for medication, as well as the involvement of SMRC employees. *Id.* Disability Rights specifically requested access to records pertaining to that individual, along with access to facility documentation pertinent to the incident. *Id.* at p. 3.

After receiving the letter, DMH realized that the letter mistakenly identified another SMRC resident who shared the same first name and lived on the same campus as the intended resident. *See* Exhibit 4, Declaration of Cindy Cooley. DMH personnel began collecting the correct records and contacted Disability Rights to advise it of the mistake and to inquire as to how Disability Rights would like to proceed. *Id.* Disability Rights, however, did not respond to repeated communications from DMH personnel. *Id.*

Notably, even where Disability Rights identified the wrong individual, DMH did not contest Disability Rights' determination of probable cause or question the sufficiency of the factual

---

[6] Identifying information for the individual has been redacted.

basis presented. To the contrary, DMH worked to identify the correct individual, gathered the requested records, and attempted to assist Disability Rights in furthering the investigation. Thus, it is clear that when Disability Rights makes a request pursuant to its statutory authority, it properly presents the facts supporting that request, and DMH complies and assists.

> iv. **The basis for Disability Rights' demands for incident reports has changed as this dispute has progressed.**

The progression of Disability Rights' demands and assertions during this dispute further illustrate that Disability Rights has no basis in complaint or factually-supported probable cause that would entitle it to access incident reports from DMH facilities. Disability Rights first demanded production of incident reports with no statement whatsoever concerning complaints or probable cause. Instead, Disability Rights argued that incident reports are *per se* accessible under PAIMI. Disability Rights then issued probable cause notices, which lacked any factual basis or particularization to any incident or individual. Finally, Disability Rights filed the instant lawsuit, mentioning – for the first time – several bases for its demand for incident reports. But these bases, even if considered, are inadequate because they are not particularized to any incident or individual or supported by actual facts.

Disability Rights' initial letter demand for monthly production of incident reports contained no mention of any complaint or factual basis supporting a determination of probable cause. *See* Am. Compl. at Ex. A, [Dkt. 2-1]. But in the facts recited in its amended complaint, Disability Rights now contends – for the first time – that, prior to the first demand, it had "determined that it would begin to review incident reports at each [DMH] facility" based on "mounting concerns following DMH's ongoing failures as outlined by the United States Department of Justice in its litigation and subsequent rulings as well as growing complaints when interviewing residents at these facilities." *Id.*, [Dkt. 2] at ¶ 20. Even now, Disability Rights

presents no explanation of these "failures" and how they may be related to incidents of abuse or neglect. And Disability Rights still provides no factual support concerning these purported "concerns" or "complaints," nor any details of alleged abuse or neglect. And the initial letter request, dated August 17, 2021, contained no mention of "failures," "complaints," or any other allegations. Rather, Disability Rights simply demanded "to receive incident reports from Mississippi State Hospital for the last thirty (30) days and on a regular, scheduled basis moving forward." *Id.* at Ex. A, [Dkt. 2-1].

When its initial demand wasn't successful, counsel for Disability Rights argued that DMH's incident reports are *per se* accessible under PAIMI:

> Incident reports, by definition, are reports when something did not go accordingly – we have the authority to review those for any indication of potential abuse and neglect as stated in the PAIMI statutes.

*See* Exhibit 5. However, no P&A statute makes incident reports *per se* accessible to P&A systems. And the P&A statutes' prerequisites for access to non-client records necessarily preclude an argument that any documents are accessible to P&A systems "by definition."

According to the facts of the amended complaint, Disability Rights determined that it had probable cause *only after* DMH denied that first request for incident reports to be produced monthly and in perpetuity:

> *At this point*, [Disability Rights] made the determination that, given the information obtained during the course of its routine and regular monitoring, complaints from [Disability Rights] clients across DMH facilities, and anonymous information provided by staff at various facilities compounded with the concerns/observations that COVID protocol and precautions had not been followed, there was sufficient probable cause to open a systemic investigation of DMH facilities.

Am. Compl., [Dkt. 2] at ¶ 25 (emphasis added). Disability Rights now asserts – for the first time – that its demands for incident reports were based on (1) client complaints, (2) anonymous

information, and (3) concerns about COVID protocols. *Id.* But the 10 letter demands issued to DMH facilities contained no mention of complaints, no mention of anonymous information, and no mention of COVID concerns. *See generally id.* at Ex. D. And neither the letters nor the amended complaint set forth any factual support detailing who made these purported complaints, what abuse or neglect is alleged in the complaints, how complaints made by one individual might implicate access to records of other individuals, what anonymous information was provided, what abuse or neglect is alleged in the anonymous information, what COVID concerns have been raised, and how those COVID concerns might amount to abuse or neglect.

If Disability Rights had received complaints justifying its requests for incident reports, it should have – and would have, as it did in the November 10 letter to SMRC – presented the factual basis supporting its determination of probable cause. DMH would submit that no facts were provided in the 10 demand letters because none existed at the time the demands were made.

## 2. Disability Rights has shown no substantial threat of irreparable injury.

Like its demands for incident reports, Disability Rights provides no factual basis for its assertion that there is a substantial threat that irreparable injury will result if the preliminary injunction is not granted.

The "central purpose of a preliminary injunction … is to prevent irreparable harm." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). "It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin before the merits are fully determined." *Id.* (citations omitted). "Irreparable harm requires a showing that: (1) the harm to the plaintiff is imminent; (2) the injury would be irreparable; and (3) that the plaintiff has no other adequate legal remedy." *Bond Pharmacy*, 815 F.Supp.2d at 975 (quoting *Metal Mgmt. Mississippi, Inc. v. Barbour*, Civil Action No. 3:08-cv-431-HTW-LRA, 2008 WL 3842979 at *12 (S.D. Miss. 2008)).

Court have recognized that "a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm." *Ohio Legal Rights Service*, 365 F.Supp.2d at 883.

Disability Rights argues that "[t]he term *abuse and neglect* in and of itself should spark the requisite urgency and possibility of irreparable harm if further denial occurs." Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, [Dkt. 8] at 9 (emphasis in original). Disability Rights also contends that it will be irreparably harmed if DMH "is not immediately enjoined from continuing to violate" the P&A statutes and that DMH must be ordered to produce the requested incident reports and "any further records that [Disability Rights] requests in the future as investigations are ongoing." *Id.* at 9-10.

But as explained *supra*, DMH has not violated any law; rather, it is Disability Rights' demands that do not comply with the P&A statutes. Thus, it cannot be said that DMH has impeded – or will continue to impede, absent a preliminary injunction – Disability Rights from carrying out its function. Like its initial argument that incident reports are *per se* accessible, Disability Rights provides no legal basis for its position that use of the terms "abuse and neglect" constitute a *per se* threat of irreparable harm. And although Disability Rights contends that its investigations may be impeded and that "residents of the facility may continue to be exposed to the same conditions," Disability Rights provides no explanation or factual basis for these investigations, for the particular allegations warranting an investigation, or even for the alleged "conditions." *Id.* at 10. Moreover, DMH has continued to cooperate with Disability Rights when its demands comply with the P&A statutes, even since this dispute arose. And Disability Rights makes no allegations that incidents of abuse or neglect are occurring or will continue to occur without a preliminary injunction.

Disability Rights wants to go fishing by reviewing DMH incident reports. But with no factual basis for the fishing expedition, Disability Rights has failed to clearly establish a substantial threat of irreparable injury if a preliminary injunction is denied.

**3. The threatened injury does not outweigh harm to the defendant.**

Disability Rights argues that the threatened injury outweighs any threatened harm to the defendant, but again, Disability Rights cites no factual basis for the "severe harm" it alleges will result if a preliminary injunction is not granted. Nor does Disability Rights provide any explanation whatsoever as to what this "severe harm" might be. To the contrary, DMH will surely be harmed if ordered to not only produce incident reports for all facilities for the months requested, but also to blindly acquiesce to any future Disability Rights demand.

Disability Rights asks this Court to concur with a Louisiana district court which stated "the court sees no harm that would come to the defendants by forcing them to comply with provisions of the PAMII Act, a law adopted by the national legislature." *Advocacy Center v. Stalder*, 128 F.Supp.2d 358, 368 (M.D. La. 1999). But the facts of that case are dissimilar to those here. There, a prison inmate submitted a complaint to the P&A system, and the system, in turn, requested that inmate's records. *Id.* at 361. The facility, however, denied the request. *Id.* At the outset of the litigation, the court entered a temporary restraining order mandating that the inmate's records be released to the system. *Id.* By the time the matter was ripe to be adjudicated on dispositive motions, the facility had denied subsequent requests to access to at least seven other inmates who had submitted complaints to the system, citing – as it did for the original denial – department policy requiring a court order or *in camera* inspection before providing access to records. *Id.* at 368. It is that refusal to comply with the P&A statutes that led the court to permanently enjoin the facility: "Issuance of a permanent injunction in this case does not subject the defendants to a penalty or a

hardship since it requires them to do exactly what the act requires, i.e., to comply with the law." *Id.*

Here, DMH has complied with the law and continues to do so. There is no threat of irreparable injury, so the weight of this factor lies in the burden that would be borne by DMH in being enjoined to respond to demands from Disability Rights that exceed its authority.

### 4. The public interest requires that Disability Rights' demands comply with the P&A statutes.

Disability Rights is correct in its assertion that "[t]he public interest is always served by requiring parties to comply with federal statutes." Memorandum, [Dkt. 8] at 11. And it is also true that "the P&A statutes reflect a strong public interest in protecting those with mental illnesses." *Gray*, 2011 WL 3047667 at *2.

But the public interest would not be served by requiring facilities to acquiesce to Disability Rights' demands regardless of whether they comply with the P&A statutes. As the Utah court noted in *Disability Law Center*, to do so would allow the system "to determine, without any checks or balances of its demand, when it may conduct what is effectively a search and seizure of the [facility's] records and information," raising constitutional concerns. *Disability Law Center*, 2010 WL 55989 at *6. Moreover, the P&A statutes were carefully crafted to provide access to records in certain situations and to limit system access to records of non-clients. *See* 42 U.S.C. § 10805(a)(4)(C)(i-iii); 42 U.S.C. § 15043(a)(2)(I)(iii)(I-V); 45 C.F.R. § 1326.25(a)(3)(i-iii). Thus, there is a public interest in requiring P&A systems to satisfy the statutes before accessing records, as well as in protecting the records of non-clients.

Because Disability Rights has not "clearly carried the burden of persuasion" on all four elements, its request for preliminary injunction should be denied.

### B.    Summary judgment is appropriate.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citation omitted).  A court must view the record in the light most favorable to the nonmoving party, drawing all factual inferences in the nonmoving party's favor. *Scales v. Slater*, 181 F.3d 703, 708 (5th Cir. 1999) (citation omitted).

The moving party has the initial burden of showing that there is no genuine issue as to any material fact. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990).  To defend against summary judgment, the nonmoving party may not "rest upon the mere allegations of [its] complaint." *Norton v. McShane*, 332 F.2d 855, 861 (5th Cir. 1964).  Nor will "conclusory allegations" or "unsubstantiated assertions" allow the nonmoving party to avoid summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 (5th Cir. 1994) (citations omitted).

The facts are not in dispute here.  Disability Rights first demanded that the Mississippi State Hospital forward copies of all incident reports, monthly and in perpetuity.  DMH denied the request because under the P&A statutes, Disability Rights' authority to access records depends on receipt of a complaint or probable cause, and Disability Rights had presented neither.  Disability

Rights responded by expanding the scope of its demand to ten different DMH facilities, sending boilerplate letters to each facility stating that it had "probable cause" to access the facilities' incident reports. But Disability Rights provided no facts to support the blanket assertions of probable cause. And the probable cause was not particularized to any alleged incident of abuse or neglect or any individual who may have been subjected to abuse or neglect. DMH again denied Disability Rights demands because the bare assertions of probable cause did not comply with the P&A statutes. Yet at each denial, DMH assured Disability Rights that if it could provide a basis for its demands with either a complaint or facts supporting probable cause, DMH would provide access to the records.

Under the P&A statutes, Disability Rights may investigate incidents of abuse or neglect when (1) it receives a complaint, or (2) probable cause exists to believe that the incidents occurred. Likewise, the P&A statutes authorize Disability Rights access to records upon receipt of a complaint or probable cause. At no time during this dispute has Disability Rights presented evidence of any complaint as a basis for its demands for access to records. And Disability Rights has provided no factual basis that would support a finding of probable cause. Moreover, although Disability Rights now asserts that it is conducting a "systemic investigation," the P&A statutes only empower Disability Rights to investigate "incidents" of abuse or neglect. Disability Rights points to no particular alleged incident of abuse or neglect nor any particular individual who may have been subjected to abuse or neglect.

Disability Rights' demands for DMH incident reports do not comply with the P&A statutes. DMH was right to deny access to the records and violated no law in doing so. For purposes of summary judgment, DMH hereby incorporates by reference case law and argument submitted in response to the motion for preliminary injunction in Subsection 1, *supra*, entitled "Disability

Rights is not substantially likely to prevail on the merits."  Because there is no genuine issue of material fact and because DMH is entitled to judgment as a matter of law, summary judgment is appropriate as to all claims against DMH.

## CONCLUSION

The P&A statutes require facilities to provide P&A systems the access to facilities, patients, and records necessary to carry out the systems' investigative function.  However, P&A systems' authority to investigate and to access records arises only under certain circumstances – either (1) upon the system's receipt of a complaint of abuse or neglect, or (2) upon probable cause that an incident of abuse or neglect occurred.  Disability Rights' demands for DMH incident reports did not comply with the applicable law.  DMH was right to deny access in those circumstances and violated no law in doing so.  Disability Rights has failed to clearly show that it is entitled to the extraordinary relief of a preliminary injunction.  Its motion should, therefore, be denied.  Further, because there are no questions as to material fact and because DMH is entitled to judgment as a matter of law, summary judgment is appropriate and should be granted as to all claims against DMH.

This, the 8th day of February, 2022.

Respectfully submitted,

MISSISSIPPI DEPARTMENT OF MENTAL HEALTH

BY:   LYNN FITCH, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI

BY:   /s/ Jackie R. Bost, II
JACKIE R. BOST, II
Special Assistant Attorney General

Jackie R. Bost, II (MSB No. 102909)
Special Assistant Attorney General
Office of the Attorney General
State of Mississippi
550 High St., Ste. 1100
P.O. Box 220
Jackson, MS  39205-0220
Tel: (601)359-3847
Fax: (601)359-4254
jackie.bost@ago.ms.gov

## CERTIFICATE OF SERVICE

I, Jackie R. Bost, II, Special Assistant Attorney General for the State of Mississippi, do hereby certify that I have, this day, filed the foregoing document with the Clerk of Court using the electronic filing system, which forwarded a copy thereof to all counsel of record.

This, the 8th day of February, 2022.

/s/ Jackie R. Bost, II
JACKIE R. BOST, II