# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**DISABILITY RIGHTS MISSISSIPPI**                                                      **PLAINTIFF**

**V.**                                                                    **CAUSE NO. 3:21-CV-726-CWR-FKB**

**MISSISSIPPI DEPARTMENT OF**                                                **DEFENDANT**
**MENTAL HEALTH**

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States of America (the United States) respectfully submits this Statement of Interest in accordance with 28 U.S.C. § 517,[1] and pursuant to the Court's January 13, 2022, Order, ECF No. 9, to provide its views regarding the proper interpretation of the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the PAIMI Act), 42 U.S.C. § 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the DD Act), 42 U.S.C. § 15001 *et seq.*; and the Protection and Advocacy for Individual Rights Act (the PAIR Act), 29 U.S.C. § 794(e) (collectively, the P&A Acts), and those statutes' application to the facts alleged in the Amended Complaint, ECF No. 2, and the pending motions, ECF Nos. 7, 15.

The United States urges the Court to grant Plaintiff Disability Rights Mississippi's (DRMS) Motion for Preliminary Injunction, ECF No. 7, deny Defendant Mississippi Department of Mental Health's (DMH) Motion for Summary Judgment, ECF No. 15, and order DMH to provide DRMS access to the requested incident reports from DMH facilities.[2] As the designated

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

[2] The Parties' briefs lay out the appropriate standards of review for the Motion for Preliminary Injunction and Motion for Summary Judgment. *See* ECF Nos. 8, 14, 16, 19, 21. The United States' brief will address only the legal question of whether DRMS has established probable cause to access the requested incident reports. This issue is dispositive for the Parties' outstanding motions.

1

protection and advocacy organization (P&A) for Mississippi, DRMS has broad authority to

investigate abuse or neglect in order to protect the rights of individuals with disabilities.

Pursuant to this broad authority, when DRMS determines it has probable cause to investigate

potential abuse or neglect in DMH-operated facilities, DRMS is entitled to access incident

reports for those facilities without making individual-specific probable cause determinations or

having to identify residents by name.

### INTEREST OF THE UNITED STATES

The United States submits this Statement of Interest because this litigation involves the

proper interpretation and application of federal law—the P&A Acts—and the Court has invited

the United States to submit its views.  *See* ECF No. 9.  In addition, the Department of Justice has

authority to enforce Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12134,

and the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq.*  The national

network of P&As plays a significant role in furthering the objectives of those laws.

### BACKGROUND[3]

DRMS, as the designated P&A in Mississippi, is charged with protecting and advocating

for people with disabilities across the state, including those residing in DMH-operated facilities.

ECF No. 2 ¶ 11.  DMH facilities provide mental healthcare to individuals with mental illness,

intellectual and developmental disabilities, and other disabilities.  ECF No. 2 ¶¶ 12, 16.  In

August 2021, due to concerns outlined in the United States' litigation against the State of

Mississippi related to its use of state hospitals for individuals with disabilities[4] and an increasing

number of complaints from residents at DMH facilities, DRMS submitted a request for 30 days

---

[3] Facts set forth here are those alleged in Plaintiff Disability Rights Mississippi's Amended Complaint, ECF No. 2.
[4] *United States v. Mississippi*, No. 3:16-CV-622-CWR-FKB (S.D. Miss.).

of incident reports at the Mississippi State Hospital (MSH).  ECF No. 2 ¶¶ 20, 21.  Typically, incident reports describe unusual events, such as harm to an individual or errors or omissions in care.  Although DMH agreed that access to incident reports is permissible under the P&A Acts, DMH denied the request for incident reports in this instance, stating that DRMS failed to provide sufficient probable cause or present a complaint.  ECF No. 2 ¶¶ 22, 24.

Given information obtained during the course of its routine and regular monitoring, including troubling issues related to understaffing, unreported incidents, patient neglect, nonuse of COVID protocol and precautions by onsite staff, and staff-on-resident injuries and incidents; complaints from DRMS clients across DMH facilities; and anonymous information provided by staff at various facilities, DRMS decided to open an investigation of all DMH facilities.  ECF No. 2 ¶¶ 25, 39.  In October 2021, DRMS issued probable cause/investigative notice letters to ten DMH facilities, including MSH.  ECF No. 2 ¶ 26.  Each notice letter contained a request for the facility to provide DRMS "any and all incident reports which occurred" in August, September, and October 2021.  ECF No. 2-4 at 2.  DMH denied the request, once again stating that DRMS failed to provide sufficient probable cause or present a complaint.  ECF No. 2 ¶¶ 27, 28.

DRMS filed a Complaint in this Court on November 9, 2021, ECF No. 1, and it amended the Complaint on November 18, 2021, ECF No. 2.  It claims that DMH's denial of access to incident reports violates the P&A Acts and requests declarative and injunctive relief.  ECF No. 2.  On January 4, 2022, DRMS filed a Motion for Preliminary Injunction.  ECF No. 7.  On February 8, 2022, DMH filed a combined opposition to the Motion for Preliminary Injunction, ECF No. 13, and Motion for Summary Judgment, ECF No. 15, and DRMS filed a reply in support of its Motion for Preliminary Injunction on February 22, 2022, ECF No. 18.  DRMS filed an

opposition to DMH's Motion for Summary Judgment on March 1, 2022, ECF No. 20, and DMH filed a reply in support of its Motion for Summary Judgement on March 8, 2022, ECF No. 22.

**ARGUMENT**

**I.      The P&A Acts grant P&As broad authority to investigate abuse or neglect.**

Congress created a system of independent P&As in response to a history of widespread abuse and neglect of individuals with disabilities and mental illness by the providers charged with their care.  42 U.S.C. § 15001; 42 U.S.C. § 10801; 29 U.S.C. § 794e.  Pursuant to the P&A Acts, Congress established P&As "in each State to protect the legal and human rights of individuals with developmental disabilities," 42 U.S.C. § 15001(b)(2), "and to ensure that the rights of individuals with mental illness are protected," 42 U.S.C. § 10801(b)(1).  The P&A Acts "establish separate but largely parallel regimes to serve particular populations of people with disabilities."  *Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 724 (7th Cir. 2006).  The DD Act applies to individuals with developmental disabilities, 42 U.S.C. § 15043(a)(1), the PAIMI Act to individuals with mental illness, 45 U.S.C. § 10805(a)(1), and the PAIR Act to individuals with disabilities who are not covered under either the DD or PAIMI Acts, 29 U.S.C. § 794e(a)(1).[5]

Under the P&A Acts, P&As have broad authority "to investigate incidents of abuse and neglect of individuals" with mental illness or developmental or other disabilities "if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."  42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); *see also Miss. Prot. and Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991) (interpreting the DD

---

[5] Because the Acts established largely parallel regimes, courts often apply case law interpreting one P&A Act to another P&A Act.  *See, e.g.*, *Advoc. Inc. v. Tarrant Cnty. Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *4 & n.8 (N.D. Tex. Oct. 11, 2001) (applying to the PAIMI Act a Fifth Circuit case interpreting the DD Act).

Act as authorizing a "broad range of services"); *In re Disability Rights Idaho Request for Ada Cnty. Coroner Records Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1292 (D. Idaho 2016) (stating that under the PAIMI Act, P&As "are given broad authority to investigate incidents of abuse and neglect of individuals with mental illnesses"); *J.H. ex rel. Gray v. Hinds Cnty.*, Civil Action No. 3:11-cv-327-DPJ-FKB, 2011 WL 3047667, at *2 (S.D. Miss. July 25, 2011) (stating that the P&A Acts "reflect a strong public interest in protecting those with mental illnesses, and limiting a P&A service from fully exercising its authority places residents with mental illnesses at increased risk of harm").

The P&A Acts also "provide[] express authority for P&As to gain broad access to records, facilities, and residents to ensure that the [Acts'] mandates can be effectively pursued." *Ala. Disabilities Advoc. Program v. J.S. Tarwater Dev. Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (citing *Cotten*, 929 F.2d at 1058-59).  For example, a P&A must "have access to all records of … any individual" with a disability or mental illness "who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access."  42 U.S.C. § 15043(a)(2)(I)(i); 42 U.S.C. § 10805(a)(4)(A); 29 U.S.C. § 794e(f)(2).  In circumstances where an individual is unable to authorize access and has no parent or guardian, a P&A may access records so long as it has probable cause to believe, as a result of monitoring or other activities, that the individual has been subject to abuse or neglect.  42 U.S.C. § 15043(a)(2)(I)(ii); 42 U.S.C. § 10805(a)(4)(B); 29 U.S.C. § 794e(f)(2).  And where an individual has a parent or guardian, but that parent or guardian has refused to act, a P&A may access the individual's records under the DD and PAIR Acts so long as it has received a complaint or, as a result of monitoring or other activities, there is probable cause to believe that the individual has been abused or neglected.  42 U.S.C.

§ 15043(a)(2)(I)(iii); 29 U.S.C. § 794e(f)(2).  Under the PAIMI Act, the P&A can access an individual's records so long as it has received a complaint or there is probable cause to believe that the individual's health or safety is in serious and immediate jeopardy.  42 U.S.C. § 10805(a)(4)(C).

## II.     Pursuant to its broad investigative authority, DRMS is entitled to the requested incident reports.

The P&A Acts expressly empower a P&A to make probable cause determinations triggering its authority to investigate abuse or neglect.  42 C.F.R. §§ 51.41(b)(2)-(3), 51.31(g); 45 C.F.R. §§ 1326.19, 1326.25(a); Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53,548, 53,552 (Oct. 15, 1997) ("[D]etermination of whether sufficient probable cause exists shall be based on the independent judgment of the P&A system," though the P&A may "articulate the basis of its probable cause determination when requested.").  The P&A is the "final arbiter" of the probable cause determination, and a facility "may not refuse access to records merely because it disagrees with the existence of probable cause."  *Advoc. Inc.*, 2001 WL 1297688, at *4; *see also Gray*, 2011 WL 3047667, at *2 n.2 (citing *Cotten*, 929 F.2d at 1059).

Under the DD and PAIR Acts, "probable cause" is "a reasonable ground for belief" that an individual "has been, or may be, subject to abuse or neglect, or that the health or safety of the individual is in serious and immediate jeopardy."  45 C.F.R. § 1326.19.  Under the PAIMI Act, "probable cause" is "reasonable grounds for belief" that an individual "has been, or may be at significant risk of being subject to abuse or neglect."  42 C.F.R. § 51.2.  Under all three P&A Acts, the person making the probable cause determination "may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect."  42 C.F.R. § 51.2; 45 C.F.R. § 1326.19.

The applicable regulations also do not require that any specific type of evidence support the P&A's probable cause determination. *See* 42 C.F.R. §§ 51.2, 51.41-51.44 (containing no requirements regarding type of evidence necessary to support probable cause determination); 45 C.F.R. §§ 1326.19, 1326.25-1326.27 (same). Moreover, a P&A's probable cause determination under the P&A Acts does not require the same level of evidence as that under the Constitution because "grafting a probable cause standard onto the protective legislation comparable to the standard utilized under the Fourth Amendment would substantially frustrate the goal of protecting impaired individuals." *Advoc. Inc.*, 2001 WL 1297688, at *3.

### A. DRMS made a probable cause determination that incidents of abuse or neglect may have occurred, thus triggering its investigative authority.

DRMS has alleged "reasonable grounds for belief" that the individuals in DMH facilities who are the subjects of incident reports "ha[ve] been or may be at significant risk" of being abused or neglected. *See* 42 C.F.R. § 51.2 (individuals with mental illness); 45 C.F.R. § 1326.19 (individuals with developmental or other disabilities). During its routine monitoring activities, DRMS advocates observed troubling issues, including understaffing, unreported incidents, patient neglect, nonuse of COVID protocol and precautions by onsite staff, and staff-on-resident injuries and incidents. ECF No. 2 ¶¶ 20, 39. DRMS also received complaints from its clients across DMH facilities, as well as anonymous information provided by staff at various facilities. ECF No. 2 ¶¶ 20, 25. Most importantly, the existence of incident reports regarding specific individuals inherently indicates that unusual events involving those individuals, such as harm or an error or omission in care, have occurred. Based on its experience and training regarding incidents, conditions, and problems usually associated with abuse and neglect, the combination of observations, complaints, and incident reports regarding specific individuals permitted DRMS to determine there was probable cause that the individuals identified in the incident reports have

been or may be at significant risk of being abused or neglected and continue to face that risk in the future.  *See* 42 C.F.R. § 51.2; 45 C.F.R. § 1326.19; *Advoc. Inc.*, 2001 WL 1297688, at *5.

DMH incorrectly asserts that DRMS' probable cause determination is insufficient because it does not pertain to specific individuals.  "[N]either the [P&A] Act[s] nor case law impose[] an individual-specific probable cause requirement," and probable cause may appropriately be based on "general conditions or problems that affect many or all individuals in a facility."  62 Fed. Reg. at 53,559.  Several courts have permitted investigations and access to records where the P&A's probable cause determination was not individualized or where the P&A did not yet know the names of the individuals who may have been abused or neglected. *See Conn. Office of Prot. and Advoc. for Pers. with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 245 (2d Cir. 2006) (permitting the P&A to make a systemwide probable cause determination because it received systemwide allegations and "could have reason to believe that all students at the school had been, were being, or were at risk of being neglected or abused"); *id.* ("[A]lthough the P&A Acts speak in terms of the 'individual' or 'an individual,' nothing in the statute suggests that [a P&A] cannot seek authorization for a number of individuals if it has made a probable cause determination that multiple individuals have been subjected to abuse or neglect"); *Disability Rights Ohio v. Buckeye Ranch, Inc.*, 375 F. Supp. 3d 873, 890-91 (S.D. Ohio 2019) (permitting an expanded investigation beyond specific reports related to specific students); *see also Disability Law Ctr. of Alaska, Inc. v. Anchorage School Dist.*, 581 F.3d 936, 939 (9th Cir. 2009) (suggesting that complaints concerning general problems with classroom conditions and the treatment of students could create probable cause).

Moreover, unlike investigation attempts previously rejected by courts, this is not a case where DRMS contends that every individual in every DMH facility has been subject to abuse or

neglect, *see Charlotte-Mecklenburg Bd. of Educ. v. Disability Rights of N.C.*, 430 F. Supp. 3d 74, 83 (W.D.N.C. 2019) (finding the fact that wheelchairs were unnecessarily used for some students was insufficient to create probable cause that every student in the facility had been subject to abuse or neglect), or where it seeks to stretch a complaint about one individual into an investigation of "general operational misconduct," *see Disability Law Ctr. v. Discovery Acad.*, No. 2:07-cv-00511-CW-PMW, 2010 WL 55989, at *3 (D. Utah Jan. 5, 2010) (finding that the P&A had failed to come forward with any facts to support its probable cause determination and that it was attempting to take a complaint about a single individual who had been unnecessarily restrained and "expand the scope of the investigation to general operational misconduct"), or where it has made no probable cause determination at all, *see Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 887-88 (S.D. Ohio 2005) (finding that P&A was not entitled to seclusion and restraint logs because it had not made a probable cause determination at the time it requested them).

Rather, DRMS observed many instances of abuse or neglect during its routine monitoring of DMH facilities, ECF No. 2 ¶¶ 20, 25, 39, and received complaints and information from residents, families, and staff regarding abuse or neglect of many individuals across DMH facilities, ECF No. 2 ¶ 25. Based on these observations, complaints, and information, DRMS made a probable cause determination that a subset of individuals in DMH facilities has been or may be at significant risk of being abused or neglected, and it seeks to investigate facts related to abuse or neglect by accessing a single category of documents likely to reveal any such abuses. It does not seek to investigate generalized problems, conditions, or misconduct. Thus, DRMS has sufficiently determined that probable cause exists to trigger its broad authority to investigate the nature and extent of any abuse or neglect at DMH facilities.

### B. DRMS is entitled to the requested incident reports in order to carry out its investigation of DMH facilities.

Having established probable cause that the individuals identified in the requested incident reports have been, or may be, subject to abuse or neglect, DRMS is entitled to access the incident reports to carry out its investigation. *See* 42 U.S.C. § 15043(a)(2)(B) (authorizing P&As to investigate abuse and neglect where they have probable cause); 42 U.S.C. § 10805(a)(1)(A) (same); 29 U.S.C. § 794e(f)(2) (same). DMH seeks to withhold incident reports on grounds that DRMS must gather authorization to obtain these records. ECF No. 14 at 3-5 (citing 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 10805(a)(4); 29 U.S.C. §794e(f)(2)). But the P&A Acts' provisions regarding access to individual records are distinct from the Acts' grant of broad authority to investigate abuse or neglect. Notably, the latter requires only a complaint or probable cause. Because DRMS has established probable cause to investigate the nature and extent of any abuse or neglect, it is entitled to the incident reports relevant to its investigation.

To require DRMS to get authorization from every individual referenced in every incident report would be unreasonable, illogical, and inconsistent with the protective purpose of the P&A Acts. *Cf. Gray*, 2011 WL 3047667, at *2 (stating the P&A Acts "reflect a strong public interest in protecting those with mental illnesses, and limiting a P&A service from fully exercising its authority places residents with mental illnesses at increased risk of harm"). Further, permitting DMH to place restrictions on DRMS' access to incident reports would mean "the mandatory provisions relating to authority to investigate incidents of abuse and neglect are rendered nugatory. This not only hampers redress of past and current abuse or neglect, but has a detrimental effect on the advocacy agency's future performance of its statutory mandate." *Advoc. Inc.*, 2001 WL 1297688, at *4 (citing *Cotten*, 929 F.2d at 1059). Moreover, it would make superfluous the P&A's broad authority to conduct abuse or neglect investigations, which is

10

not limited by any authorization requirements. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); *see also Cotten*, 929 F.2d at 1059 (rejecting contentions that a P&A's function is limited to "that of attorneys available to be retained by residents if they or their guardians so desire," and that a State may circumscribe a P&A's statutory authority); *cf. Advoc. Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367 (M.D. La. 1999) (finding that a P&A does not need "to obtain a court order every time it seeks to investigate" because that "would, in effect, impede its ability to investigate a claim").

Finally, courts have recognized that P&A access to incident reports is reasonable and appropriate, even without authorization from individuals referenced in the reports. *See, e.g.*, Video Settlement Conference Report and Order, ECF No. 14, *Disability Rights La. v. Phillips*, No. 21-422-SDD-EWD (M.D. La. Nov. 5, 2021) (approving settlement agreement between P&A and state whereby P&A would access incident reports); Order Signing Amended Consent Decree, ECF No. 64, *J.H. v. Hinds Cnty., Miss.*, No. 3:11-CV-327-DPJ-FKB (S.D. Miss. Mar. 25, 2016) (signing consent decree between DRMS and Hinds County whereby DRMS would access incident reports); *Prot. & Advoc. Sys., Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1220 (D. Wyo. 2006) (approving an agreement between state hospital and P&A whereby the P&A would access unredacted incident reports upon a determination that a redacted incident report provided probable cause and stating that "incident reports contain information which can be helpful to [a] P&A in monitoring compliance with patients' rights and in determining whether there is probable cause to believe that abuse and neglect has occurred"). Access to this limited set of records is entirely consistent with DRMS' broad investigative authority and statutory mandate to ensure that individuals with mental illness or disabilities are not abused or neglected.

But even under Defendant's interpretation of the law, DMH is not permitted to impede DRMS' ability to obtain any necessary authorizations for records access.  In fact, the P&A Acts' implementing regulations expressly contemplate that a facility will provide individual contact information to a P&A, if necessary.  *See* 42 C.F.R. § 51.43 (requiring a facility, where it denies a P&A access to records, to provide "a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number" of the individual's guardian or other representative); 45 C.F.R. § 1326.26 (same).  DRMS could not obtain this authorization, and thus could not continue its investigation, if it did not know the identities of and contact information for the individuals for whom it has probable cause to believe may have been abused or neglected—the individuals identified in the incident reports.  Applicable case law also requires disclosure of this information in order to aid P&As in exercising the authority granted to them by the P&A Acts.  *See Hartford*, 464 F.3d at 244-46 (finding that P&A was entitled to names and contact information from facility in order to obtain authorization); *Disability Rights Wis.*, 463 F.3d at 728-30 (requiring facility to release names of four individuals so that P&A could obtain authorization); *cf. Gray*, 2011 WL 3047667, at *5 ("[T]o the extent the evidence is lacking, the County presents a 'Catch 22' by claiming DRMS lacks sufficient evidence of actual cases of mental illness but denying DRMS access to residents for the purpose of determining whether other cases exist.  The position is inconsistent with the purposes of the P&A statutes.").  Although an individual's authorization is not required for a P&A to investigate abuse or neglect, nor is it always required to access records, a lesser alternative to ordering DMH to produce the incident reports would be to order it to produce a list of the individuals referenced in the requested incident reports and their contact information.

## CONCLUSION

For the reasons above, the Court should grant the Motion for Preliminary Injunction, deny the Motion for Summary Judgment, and order DMH to provide DRMS with the requested incident reports pursuant to DRMS' broad authority to investigate abuse or neglect.

Respectfully submitted,

Dated: March 14, 2022

| | |
|---|---|
| DARREN J. LAMARCA<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| ANGELA WILLIAMS<br>Assistant United States Attorney<br>Southern District of Mississippi | STEVEN H. ROSENBAUM<br>Chief |
| DANIEL J. BERRY<br>Acting General Counsel | BENJAMIN O. TAYLOE, JR.<br>Deputy Chief |
| SEAN KEVENEY<br>Deputy General Counsel<br>U.S Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201 | /s/ Shayna Stern<br>SHAYNA STERN<br>DC Bar No. 1617212<br>Trial Attorney<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, N.E.<br>Washington, DC 20002<br>Phone: (202) 598-0485<br>Shayna.Stern2@usdoj.gov |

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                                                        /s/ Shayna Stern
                                                        SHAYNA STERN